No. 15-5880

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

APRIL MILLER, Ph.D; KAREN ANN ROBERTS; SHANTEL BURKE;
STEPHEN NAPIER; JODY FERNANDEZ; KEVIN HOLLOWAY; L. AARON
SKAGGS; and BARRY SPARTMAN,

Plaintiffs-Appellees,

*v.*

KIM DAVIS, Individually,

Defendant-Appellant.

_____

On Appeal From The United States District Court
For The Eastern District of Kentucky
In Case No. 15-cv-00044 Before The Honorable David L. Bunning

_____

## APPELLANT KIM DAVIS' EMERGENCY MOTION FOR IMMEDIATE
## CONSIDERATION AND MOTION TO STAY DISTRICT COURT'S
## AUGUST 12, 2015 ORDER PENDING APPEAL

_____

A.C. Donahue
DONAHUE LAW GROUP, P.S.C.
P.O. Box 659
Somerset, Kentucky 42502
(606) 677-2741
ACDonahue@DonahueLawGroup.com

Horatio G. Mihet, *Counsel of Record*
Roger K. Gannam
Jonathan D. Christman
LIBERTY COUNSEL
P.O. Box 540774
Orlando, Florida 32854
(800) 671-1776
hmihet@lc.org / rgannam@lc.org /
jchristman@lc.org

*Counsel for Appellant Kim Davis*

Pursuant to Fed. R. App. P. 8(a)(2) and 27, Appellant Kim Davis ("Davis") hereby moves this Court, on an emergency basis, for a stay pending appeal of the district court's August 12, 2015 order (D.E. 43)[1] (hereinafter the "Injunction").

## INTRODUCTION

The Injunction enjoins Davis, the County Clerk for Rowan County, Kentucky, to immediately authorize and issue under her name marriage licenses to the same-sex couples named in this lawsuit, in derogation of her conscience and religious liberty. Despite acknowledging that this case presents a constitutional "conflict" and "debate" between implicit and explicit rights, the district court has refused to grant Davis a stay of the Injunction pending appeal, electing instead to grant a temporary stay that expires on August 31, 2015. As it has already done in prior precedential marriage cases, this Court should grant an immediate stay of the Injunction.

A same-sex "marriage" ("SSM") license issued on Davis' authorization and bearing her name and imprimatur substantially and irreparably burdens Davis' conscience and deeply-held, sincere religious beliefs, which dictate to Davis that such unions are not and cannot be "marriage." That searing act of personal validation would forever echo in her conscience—and, if it happened, there is no absolution or correction that any earthly court can provide to rectify it. A stay of the Injunction will halt the irreversible implications on Davis' conscience while this Court reviews

---

[1]    Citations to the district court record are indicated by this format: "D.E. ___."

1

Davis' appeal and the multiple less restrictive alternatives available that do not substantially burden Davis (or the Plaintiffs).

This case is a matter of first impression, left unaddressed following the nascent *Obergefell v. Hodges*. 135 S. Ct. 2584 (2015). Over against its redefinition of marriage, *Obergefell* unanimously held that First Amendment protections for religious persons remain despite same-sex "marriage." The district court has acknowledged that "this civil action" presents a constitutional "debate," "tension," and "conflict" between "two individual liberties held sacrosanct in American jurisprudence."[2] In the district court's view, Plaintiffs' rights trump Davis' religious rights. But, unlike Plaintiffs, Davis' individual liberties are enumerated (not emanations) in the United States and Kentucky Constitutions and the Kentucky Religious Freedom Restoration Act, and, moreover, they are natural liberties tied to religious beliefs that are measured in millennia (not weeks). Such rights deserve a full hearing in this Court. In light of the foregoing, this Court should stay the Injunction pending final resolution of this appeal.

## STATEMENT OF FACTS

On July 2, 2015, less than one week after the Supreme Court decided *Obergefell v. Hodges* and the Kentucky Governor issued a directive ordering all

---

[2]    Justice Thomas expressly predicted this "inevitable" conflict as individuals "are confronted with demands to participate in and endorse civil marriages between same-sex couples." *Obergefell*, 135 S.Ct. at 2638 (Thomas, J., dissenting).

2

county clerks to personally authorize SSM licenses (the "SSM Mandate"), Plaintiffs filed this lawsuit demanding that a particular person (Davis) in a particular county (Rowan County) authorize and approve their Kentucky marriage licenses, despite widespread availability of licenses and Davis' undisputed religious conscience objection to SSM.[3] *See* D.E. 1. Plaintiffs also filed a motion for preliminary injunction to bar Davis from "refusing to issue marriage licenses to any future marriage license applications submitted by the Named Plaintiffs." *See* D.E. 2-2. Evidentiary hearings on this motion were held in Ashland, Kentucky (60 miles from the Rowan County clerk's office), and in Covington, Kentucky (100 miles away), which were attended by multiple named Plaintiffs. *See* D.E. 21, 26.[4]

On August 4, 2015, Davis filed a verified third-party Complaint against Steven L. Beshear, Governor of Kentucky ("Gov. Beshear"), the issuer of the SSM Mandate, and Wayne Onkst, Commissioner of Kentucky Department for Libraries and Archives, the state agency responsible for designing Kentucky marriage license forms. *See* D.E. 34 (attached hereto as Exhibit "F").[5] On August 7, 2015, Davis filed

---

[3]    Expressly to avoid disparate treatment of any couple, Davis discontinued the issuance of all marriage licenses after *Obergefell*. Two plaintiff couples are different sex couples, to whom Davis has no religious objection to issuing marriage licenses.

[4]    A copy of the July 13, 2015 and July 20, 2015 hearing transcripts are attached hereto as Exhibits "D" and "E," respectively.

[5]    On that same day, Davis filed a motion to dismiss Plaintiffs' Complaint in its entirety. *See* D.E. 32.

a motion for preliminary injunction to enjoin enforcement of Gov. Beshear's SSM Mandate and obtain an exemption "from having to authorize the issuance of Kentucky marriage licenses." *See* D.E. 39-7. The grounds on which Davis seeks relief from Gov. Beshear are intertwined with the grounds on which she opposed Plaintiffs' request for an injunction against her. *See* D.E. 29, 39-1. Notwithstanding, the district court entered its Injunction, rather than considering Davis' and Plaintiffs' requests together and allowing Davis to develop a further evidentiary record on her own request for individual accommodation from Gov. Beshear's SSM Mandate.

The Injunction enjoins Davis "from applying her 'no marriage licenses' policy to future marriage license requests submitted by Plaintiffs." *See* D.E. 43 at 28 (attached hereto as Exhibit "B"). The district court stated that "this civil action presents a conflict between two individual liberties held sacrosanct in American jurisprudence," thereby conceding that Davis' religious rights are, in fact, being both "threaten[ed]" and "infringe[d]" by Plaintiffs' demands for her approval of their proposed unions, and by Gov. Beshear's SSM Mandate to provide exactly that or resign. *Id.* at 2. Notwithstanding, without giving full consideration to Davis' own motion for injunctive relief and further development of an evidentiary record, the district court granted Plaintiffs' motion for preliminary injunction.

Even though Plaintiffs indisputably are able to obtain a Kentucky marriage license from more than 130 marriage licensing locations, including all nearby and

surrounding counties, the district court held that Plaintiffs were likely to succeed on the merits of their purported right to marry claims and were being irreparably harmed. *See id.* at 9-16. In reaching this decision, however, the district court considered "other Rowan County residents" not before the court on the Plaintiffs' motion (which was limited exclusively to the named Plaintiffs) and speculated about religious accommodation requests that might be made at unspecified times in the future by other county clerks also not before the court. *Id.* at 12.

The district court also rejected Davis' claims under the Kentucky Religious Freedom Restoration Act ("Kentucky RFRA"), KY. REV. STAT. § 446.350, the Free Exercise Clause, the Free Speech Clause, and the Religious Test Clause of the United States Constitution, and similar Kentucky Constitution provisions. *See* D.E. 43 at 16-28. In rejecting Davis' religious liberty, conscience, and speech claims, the district court incorrectly concluded that the Kentucky marriage license form "does not require the county clerk to condone or endorse same-sex marriage" and instead merely "asks the county clerk to certify that the information provided is accurate and that the couple is qualified to marry under Kentucky law."[6] According to the district

---

[6]    *See* D.E. 43 at 22; *see also id.* at 25 ("[T]he act of issuing a marriage license to a same-sex couple merely signifies that the couple has met the *legal requirements* to marry. It is not a sign of moral or religious approval.") (emphasis in original); *id.* at 27 ("Davis is simply being asked to signify that couples meet the legal requirements to marry. The State is not asking her to condone same-sex unions on moral or religious grounds, nor is it restricting her from engaging in a variety of religious activities.").

court, the burden on Davis' religious freedom is "more slight," and she "remains free to practice her Apostolic Christian beliefs" since she "may continue to attend church twice a week, participate in Bible Study and minister to female inmates at the Rowan County jail," and "believe that marriage is a union between one man and one woman." *Id.* at 27. But, according to the district court, "her religious convictions cannot excuse her" from authorizing SSM licenses. *See id.* at 27-28. Facing an order enjoining her to authorize Kentucky marriage licenses in derogation of her religious conscience, Davis filed an immediate notice of appeal to this Court pursuant to 28 U.S.C. § 1292(a), *see* D.E. 44 (attached hereto as Exhibit "A"), and a motion to stay pending appeal or, in the alternative, to grant a temporary stay so that Davis may promptly apply to this Court for a stay pending appeal, *see* D.E. 45.

On August 17, 2015, the district court denied Davis' motion to stay the Injunction pending appeal, but granted a temporary stay pending this Court's review of a similar request. *See* D.E. 52 (attached hereto as Exhibit "C"). In denying this stay request for the same reasons it granted a preliminary injunction, the district court nonetheless recognized (again) that "constitutional issues" are involved in this dispute and reiterated that a constitutional "debate" is present in the case at bar and therefore granted a temporary stay instead. *Id.* at 1, 7. **On August 19, 2015, the district court ordered that its temporary stay will expire August 31, 2015 absent**

**a contrary Order from this Court**. *See* D.E. 55 (attached hereto as Exhibit "G"). Davis now moves this Court to stay the Injunction pending her appeal to this Court.

## ARGUMENT

In deciding a motion for stay pending appeal, this Court balances the same four factors that are traditionally considered in evaluating a motion for preliminary injunction: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

In prior marriage cases arising from Sixth Circuit district courts, this Court consistently entered stays pending a full appeal on the merits. For instance, in *April DeBoer, et al. v. Richard Snyder, et al.*, No. 14-1341 (6th Cir. Mar. 25, 2014), Judges Rogers and White, joined by Eastern District of Kentucky Judge Caldwell, granted an emergency motion to stay pending an appeal of the Eastern District of Michigan's marriage decision in that case. In *Valeria Tanco, et al. v. William Haslam, et al.*, No. 14-5297 (6th Cir. Apr. 25, 2014), Judges Guy and Clay, joined by Eastern District of Kentucky Judge Bertelsman, overturned the Middle District of Tennessee's refusal to grant a stay pending an appeal of the district court's marriage decision.

Not long before this Court entered the above rulings, Western District of Kentucky Judge Heyburn in *Bourke v. Beshear*, 996 F. Supp. 2d 542 (W.D. Ky. 2014), granted a stay of his opinion invalidating Kentucky's democratically-approved and constitutionally-enacted natural definition of marriage, stating:

> Perhaps it is difficult for Plaintiffs to understand how rights won can be delayed. It is a truth that our judicial system can act with stunning quickness, as this Court has; and then with sometimes maddening slowness. One judge may decide a case, but ultimately others have a final say. It is the entire process, however, which gives our judicial system and our judges such high credibility and acceptance. This is the way of our Constitution.

*Id.* at 558. That conclusion is only further warranted on this appeal, to a court with "final say" on the Constitutional "conflict" engendered herein.

In the foregoing marriage cases, the stays entered preserved natural marriage laws upheld by this Court in *DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014), and **absolutely** barred same-sex couples from obtaining marriage licenses (or having marriage licenses recognized) until appeals were resolved. But here, the named Plaintiffs can indisputably obtain a Kentucky marriage license even with this Court's stay of the Injunction pending appeal, from more than 130 marriage licensing locations spread throughout Kentucky. Without dispute, nothing physically or economically prevents these named Plaintiffs from obtaining a marriage license from any of these locations. Moreover, Davis' claims are based upon enumerated

and individual Constitutional and statutory rights and protections that she holds as a person, which predate and survive *Obergefell*.

## I.    Davis has a sufficient likelihood of success on the merits of her appeal to warrant an immediate stay.

To support a motion for stay pending appeal, the moving party "need not always establish a high probability of success on the merits." *Mich. Coal.*, 945 F.2d at 153; *see also Grutter v. Bollinger*, 247 F.3d 631, 632-33 (6th Cir. 2001). Instead, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the moving party] will suffer absent the say. Simply stated, more of one excuses less of the other." *Mich. Coal.*, 945 F.2d at 153 (internal citation omitted). In other words, "a stay may be granted with either a high probability of success and some injury or vice versa." *State of Ohio v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). The moving party must still show "more than the mere 'possibility' of success on the merits," which can be done by identifying "serious questions going to the merits." *Mich. Coal.*, 945 F.2d at 153-54 (internal quotations omitted). Critically, Davis "can satisfy this element where substantial legal questions or matters of first impression are at issue and the equities favor maintaining the status quo." *See, e.g., Simon Prop. Group, Inc. v. Taubman Ctrs., Inc.*, 262 F. Supp. 2d 794, 798 (E.D. Mich. 2003); *see also United States v. Coffman*, No. 09-181, 2010 WL 4683761, at *1 (E.D. Ky. Nov. 12, 2010) (granting motion to stay pending appeal after finding that "this case will present the Sixth

Circuit with an issue of first impression"). Thus, to grant a stay, this Court need not conclude, at this point, that the district court was wrong on the merits. Instead, this Court need only conclude that this case raises "serious questions" going to the merits, or a matter of first impression, left unanswered by *Obergefell*—which did not overturn the First Amendment or overwrite other religious liberty protections.

This case presents substantial legal matters of first impression for this (or any other) federal appeals court following *Obergefell*. As the district court concluded, this case presents a constitutional "debate," "conflict," and "tension" between "two individual liberties held sacrosanct in American jurisprudence"—one enumerated and express (Davis' religious freedom), and the other unenumerated (right to marry). *See* D.E. 43 at 2, 16; D.E. 52 at 1 (reiterating the existence of a constitutional "debate"); *see also*, *e.g.*, D.E. 21, Hr'g Tr. (7/13/15), at 84:3-4, 85:20-22, 98:19-22, 99:19-21, 103:15-18, 104:8-9 (prior statements from district court acknowledging that Davis' fundamental rights are implicated in this case). The district court has now rendered a decision on the constitutional "debate" at issue—but that answer should not be forced upon Davis until her appeal is finally resolved. To ensure Davis' fundamental and "sacrosanct" rights remain protected while this Court resolves the "conflict" identified (but wrongly decided) by the district court, a stay of the Injunction pending appeal is appropriate. This conclusion is only further compelled here, where Davis' own motion for injunctive relief—specifically requesting an

10

accommodation from the SSM Mandate and a preliminary exemption "from having to authorize the issuance of Kentucky marriage licenses" (*see* D.E. 39-7)—was pending (but not decided) when the district court issued its Injunction.

Moreover, as will be further addressed in Davis' subsequent appellate filings, Davis' inability to authorize and approve SSM licenses bearing her imprimatur against her religious conscience is protected by the United States and Kentucky Constitutions, along with the Kentucky RFRA. *See* U.S. CONST., amend I; KY. CONST., §§ 1, 5; KY. REV. STAT. § 446.350. The Kentucky RFRA protects a person's "right to act or refuse to act in a manner motivated by a sincerely held religious belief," and this religious freedom right "may not be substantially burdened unless the government proves by clear and convincing evidence that it has a compelling governmental interest in infringing the specific act or refusal to act and has used the least restrictive means to further that interest." KY. REV. STAT. § 446.350; *see also Prater v. City of Burnside, Ky.*, 289 F.3d 417, 427 (6th Cir. 2002) (Free Exercise Clause "protects not only the right to hold a particular religious belief, but also the right to engage in conduct motivated by that belief.").[7] As such, the Kentucky RFRA protects not only a person's beliefs but also a person's actions (or non-actions) based

---

[7]    Because Davis' free exercise claim is combined with a free speech claim, her free exercise claim is also subject to strict scrutiny. *See Employment Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 881 (1990).

thereon, and subjugates to the strictest scrutiny any governmental action infringing religiously-motivated actions (or non-actions).

The Kentucky RFRA is similar to (but goes even further in protecting religious liberties than) the federal Religious Freedom Restoration Act ("Federal RFRA"), 42 U.S.C. § 2000bb-1(a) & (b), which was enacted to "provide very broad protection for religious liberty," *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2760 (2014), and imposes "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). Thus, Gov. Beshear's SSM Mandate—the state action here—must survive strict scrutiny, which the district court acknowledged but failed to apply. *See* D.E. 43 at 18, 27.

Although the district court concluded that the burden on Davis is "more slight," *see* D.E. 43 at 27, that conclusion is out-of-step with Supreme Court precedent analyzing substantial burdens on religious freedom under the analogous Federal RFRA, and also reaches a different result than a proposed Kentucky legislative act on what constitutes a substantial burden post-*Obergefell*.[8] The prescribed form under Gov. Beshear's SSM Mandate provided no opportunity for the religious objector Davis not to participate in endorsement and approval of SSM.

---

[8]      This bill would expressly protect clerks like Davis from having to issue SSM licenses, amending the Kentucky RFRA to state expressly that "[i]ssuing or recording" a SSM license can be considered a "substantial burden for which there is no compelling government interest." *See* D.E. 39-6, An Act Relating to Marriage, Ky. House Bill 101 (2016 Reg. Sess.).

Contrary to the district court's conclusion, the "authorization" or permission to marry unmistakably comes from Davis. **Davis is also required to put her name and imprimatur no less than two times on each and every marriage license she issues**. But Davis cannot authorize a union of two persons which, in her sincerely-held belief, is not marriage.[9] In concluding that the act of issuing SSM licenses would not severely burden Davis' religious convictions because such act would not implicate moral or religious approval of SSM, the district court essentially told Davis what her religious convictions **should** be, instead of recognizing the undisputed fact of what her religious convictions actually are, and that those convictions unmistakably bar her from issuing SSM licenses with her name plastered on them.[10]

Under the required strict scrutiny analysis, only a compelling governmental interest—in infringing upon Davis' inability to authorize and approve SSM licenses—which is "beyond broadly formulated interests" and shows harm in granting a "specific exemption" to this "particular religious claimant" will suffice. *See Gonzales v. O Centro Espirata Beneficente Uniao do Vegetal*, 546 U.S. 418,

---

[9]    *See* D.E. 26, Hr'g Tr. (7/20/15), Davis Direct, at 31:7-14, 32:4-7, 38:9-17, 40:24-41:3, 41:24-42:1, 42:17-20 ("Because if I say that I authorize that, I'm saying I agree with it, and I can't."); *id.* at 43:2-5; Hr'g Tr. (7/20/15), Davis Cross, at 61:15-19, 62:10-12 ("[M]y religious beliefs can't condone issuing and being a party to the issuance of same-sex marriage licenses."), 67:5-7; *id.*, Davis Redirect, 75:16-19, 80:16-18; *see also id.*, Blevins Cross, at 17:3-6 ("[Davis] did tell me early on, before the decision was made, that if it was to allow same-sex marriage that she could not do that in her moral judgment. She just could not do it.").

[10]    *See* note 9, *supra*.

13

430-31 (2006). But even if this showing can be made, the infringement upon Davis must still satisfy the "exceptionally demanding" least-restrictive-means standard. *See Hobby Lobby*, 134 S.Ct. at 2780. This test may "require the Government to expend additional funds" to accommodate "religious beliefs." *Hobby Lobby*, 134 S.Ct. at 2781. In this matter, even if the "desired goal" is providing Plaintiffs with Kentucky marriage licenses **in Rowan County**[11], *see Hobby Lobby*, 134 S.Ct. at 2780, **numerous less restrictive means are available** to accomplish it without substantially burdening Davis' religious freedom and conscience, such as:

- Providing an opt-out or exemption to the Kentucky marriage licensing scheme (as exists for the Kentucky fish and wildlife licensing scheme), KY. REV. STAT. § 150.195, and as other states, such as North Carolina have enacted, *see*, *e.g.*, N.C. GEN. STAT. 51-5.5;

- Deputizing a neighboring county clerk (or some other person) to issue Kentucky marriage licenses in Rowan County;

- Modifying the prescribed Kentucky marriage license form to remove the multiple references to Davis' name, and thus to remove the personal nature of the authorization that Davis must provide on the current form;

- Deeming Davis "absent" for purposes of issuing SSM licenses, based upon her moral and religious inability to issue them, and allowing those licenses to be issued by the chief executive of Rowan County, as specifically authorized by Kentucky law, *see* KY. REV. STAT. § 402.240;

- Distributing Kentucky marriage licenses at the state-level through an online or other state-wide licensing scheme; or

---

[11]   Nothing in *Obergefell* suggests that Plaintiffs have a fundamental right to receive a marriage license from a particular clerk, in a particular county.

- Calling a special legislative session to address Kentucky's entire marriage licensing scheme post-*Obergefell*.

All of the foregoing options, and others, are available to avoid substantially burdening Davis' personal religious freedom in the wake of the redefinition of marriage in *Obergefell*. The nature of Davis' religious objection is more firmly established in history than perhaps any other religious conscience objection because the "meaning of marriage" as a union between one man and one woman "has persisted in every culture," "has formed the basis of human society for millennia," and has singularly "prevailed in the United States throughout our history." *Obergefell*, 135 S. Ct. at 2612-13 (Roberts, C.J., dissenting). In fact, the majority in *Obergefell* conceded that the institution of marriage as exclusively a union between a man and a woman "has existed for millennia and across civilizations" and this view "long has been held—**and continues to be held—in good faith by reasonable and sincere people here and throughout the world**." *Id.* at 2594 (Kennedy, J., majority) (emphasis added). Thus, although the traditional view of marriage was discarded by the majority in *Obergefell*, that long-held view of marriage provides the historical underpinnings for a religious exemption and accommodation from the redefinition of marriage under the First Amendment and Kentucky RFRA.

The mandate commanding Davis **to affix her name** to SSM licenses also violates her fundamental free speech rights protected by the United States and

Kentucky Constitutions. The Free Speech Clause protects "both what to say and what **not** to say," *Riley v. Nat'l Federation of Blind of N.C., Inc.*, 487 U.S. 781, 797 (1988) (emphasis added), and states may not "force[] an individual, as part of [their] daily life" to "be an instrument for fostering public adherence to an ideological point of view [he/she] finds unacceptable." *Wooley v. Maynard*, 430 U.S. 705, 715 (1976). The Kentucky marriage form uses the word "marriage" at six different places on the form (not including the reference to "join[ing] together in the state of matrimony"), twice designates Davis as the person authorizing the marriage license, and requires the stamping of her name and endorsement on the proposed union. *See* KY. REV. STAT. § 402.100(3). For Gov. Beshear to state that Kentucky is issuing and recognizing SSM licenses is one thing. But commanding Davis to be an "instrument" for a message, view, and proposed union that she finds "morally objectionable" and "repugnant to [her] moral and religious beliefs" is altogether different, and violates not only her conscience, but also her free speech rights. *See Wooley*, 430 U.S. at 707.

Further, compelling Davis to authorize marriages against her sincerely held religious beliefs about marriage constitutes an improper religious test for holding (or maintaining) public office. Davis is being arm-twisted to either participate in the issuance of SSM licenses (her conscience be damned) or resign, since holding public office is her choice (her livelihood, qualifications, and public service be damned). But the fact "that a person is not compelled to hold office" is not an excuse for Gov.

16

Beshear to impose constitutionally-forbidden, conscience-violating criteria for office. *See Torcaso v. Watkins*, 367 U.S. 488, 495-96 (1961). Like a non-combatant whose "religious scruples" prevent him from shouldering a rifle, Davis may still "faithfully and devotedly" serve her county without approving SSM licenses. *See Girouard v. United States*, 328 U.S. 61, 64 (1946).

## II.    Davis is more harmed than Plaintiffs absent a stay pending appeal.

In weighing the harm that will occur as a result of granting or denying a stay, this Court generally considers three factors: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Mich. Coal.*, 945 F.2d at 154. The "key word" in this consideration is "irreparable," and the harm must be "both certain and immediate, rather than speculative or theoretical." *Id*. The impending harm to Davis satisfies this standard, and outweighs any purported harm to Plaintiffs.

Nothing is physically or economically preventing the named Plaintiffs in this case from obtaining a marriage license elsewhere in Kentucky. As a matter of Kentucky law, individuals may obtain a marriage license from the county clerk in any one of Kentucky's 120 counties (and the more than 130 marriage licensing locations), irrespective of their county of residence. *See* KY. REV. STAT. § 402.080. Plaintiffs concede they can obtain Kentucky marriage licenses in another county and from someone other than Davis. They simply chose (and choose) not to. As such,

Plaintiffs will not suffer irreparable and irreversible injury if resolution is postponed to await this Court's decision on the merits. This conclusion comports with the stay orders pending appeal entered by this Court in *DeBoer* and *Tanco*, and by Western District of Kentucky Judge Heyburn in *Bourke*. But, since those stay orders prohibited the issuance of SSM licenses or recognition of same-sex "marriage" in their entirety, the potential purported harm to Plaintiffs here is far less.

In stark contrast, Davis faces significant, irrevocable, and irreversible harm if she is forced to authorize and approve even one SSM license with her name on it, against her religious conscience, for "it is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). If such rights "are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future." *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989).

There is no "adequate compensatory or other corrective relief" that "will be available at a later date, in the ordinary course of litigation" (including a permanent injunction in her favor) if Davis is forced to violate her religious conscience now. *See Mich. Coal.*, 945 F.2d at 153. It is comparable to forcing the religious objecting nurse to perform an abortion, the religious objecting company or non-profit to pay for abortions or abortion-related insurance coverage, the religious objecting non-

combatant to fire on an enemy soldier, or the religious objecting state official to participate in or attend the execution of a convicted prisoner. Ordering Davis to authorize and approve a SSM license is ***the act*** that violates her conscience and substantially burdens her religious freedom – an act which cannot be undone. Importantly, Davis is not claiming a substantial burden on her religious freedom if ***someone else*** authorizes and approves a SSM license ***devoid of her name***.

Finally, the harm to Davis is not speculative but imminent. The searing act of her conscience is authorizing a SSM license bearing her imprimatur (*see*, *e.g.*, D.E. 29 at 14-15, 18-20; D.E. 39-1 at 15-18, 21-25); Plaintiffs insist on having no one other than Davis approve their proposed union (*see* D.E. 21, Hr'g Tr. (7/13/15), Miller Direct, at 29:9-12; *id.*, Spartman Direct, at 47:8-10; D.E. 46, 46-2); and the district court has ordered Davis to approve SSM licenses (*see* D.E. 43). This impending harm to Davis' conscience outweighs any travel inconveniences on Plaintiffs, who can obtain (or could have already obtained) a marriage license from more than 130 licensing locations across Kentucky while the appeal is pending.

### III.   The public interest favors granting a stay.

When it comes to the "protection of First Amendment liberties," the public has a "significant interest." *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995). Moreover, the Injunction significantly changes the relative position of the parties and, in fact, completely alters (prematurely) the

status quo existing between the parties at a time when there is ongoing public debate in Kentucky between the SSM Mandate and religious liberty. *See S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991) (an essential purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held") (citation omitted). This Court will have a chance to review the district court's constitutional and statutory determinations. To ensure that Davis' conscience and rights are not forever and irreversibly violated, this Court should stay the Injunction pending appeal.

## RELIEF REQUESTED

Appellant Kim Davis respectfully requests that this Court: (1) grant immediate consideration and (2) enter an order staying the district court's August 12, 2015 order pending final resolution of the appeal in this Court.

DATED: August 19, 2015                    Respectfully submitted:

                                          /s/ Jonathan D. Christman
A.C. Donahue                              Horatio G. Mihet, *Counsel of Record*
Donahue Law Group, P.S.C.                 Roger K. Gannam
P.O. Box 659                              Jonathan D. Christman
Somerset, Kentucky 42502                  Liberty Counsel, P.O. Box 540774
(606) 677-2741                            Orlando, Florida 32854
ACDonahue@DonahueLawGroup.com             (800) 671-1776
                                          hmihet@lc.org / rgannam@lc.org /
                                          jchristman@lc.org

                                          *Counsel for Appellant Kim Davis*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of August, 2015, I caused the foregoing document to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon the following:

William Ellis Sharp
ACLU of Kentucky
315 Guthrie Street, Suite 300
Louisville, KY 40202
sharp@aclu-ky.org

Daniel J. Canon
Laura E. Landenwich
Clay Daniel Walton Adams, PLC
462 S. Fourth Street, Suite 101
Louisville, KY 40202
dan@justiceky.com
laura@justiceky.com

*Counsel for Appellees*

/s/ Jonathan D. Christman
Jonathan D. Christman
Liberty Counsel
P.O. Box 540774
Orlando, Florida 32854
(800) 671-1776
jchristman@lc.org