Consolidated Case Nos. 15-5880, 15-5961, 15-5978

IN THE
**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

APRIL MILLER, PH.D., KAREN ANN ROBERTS, SHANTEL BURKE,
STEPHEN NAPIER, JODY FERNANDEZ, KEVIN HOLLOWAY,
L. AARON SKAGGS, and BARRY W. SPARTMAN
Plaintiffs/Appellees

v.

KIM DAVIS, INDIVIDUALLY
Third-Party Plaintiff/Defendant/Appellant

v.

STEVEN L. BESHEAR and WAYNE ONKST,
IN THEIR OFFICIAL CAPACITIES
Third-Party Defendants/Appellees

Appeal from
United States District Court for the Eastern District of Kentucky
Case No. 15-cv-044-DLB
Honorable David L. Bunning, Presiding

**BRIEF OF APPELLEES STEVEN L. BESHEAR AND WAYNE ONKST
IN THEIR OFFICIAL CAPACITIES**

WILLIAM M. LEAR, JR.
PALMER G. VANCE II
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky  40507
(859) 231-3000
*Counsel for Steven L. Beshear and
Wayne Onkst in their Official Capacities*

December 2, 2015

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to 6 Cir. R. 26.1, Appellees Steven L. Beshear, in his official capacity as Governor of Kentucky, and Wayne Onkst, in his official capacity as State Librarian and Commissioner of Kentucky Department for Libraries and Archives (collectively "State Appellees"), make the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No.


/s/ Palmer G. Vance II                                    December 2, 2015
*Counsel for Steven L. Beshear and*                      Date
*Wayne Onkst in their Official Capacities*

i

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS
    AND FINANCIAL INTEREST ....................................................... i

TABLE OF CONTENTS ................................................................ ii

TABLE OF AUTHORITIES ..........................................................iv

STATEMENT CONCERNING ORAL ARGUMENT ...........................................ix

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF ISSUES ...............................................................2

STATEMENT OF THE CASE ............................................................3

SUMMARY OF THE ARGUMENT ....................................................10

ARGUMENT ...........................................................................11

    I.    The Claims Against State Appellees Are
        Barred by Eleventh Amendment Immunity .......................................11

        A.    Requested Relief Other than Injunctive (Including
                Count I and Claims for Indemnity) Are Barred
                by the Eleventh Amendment.....................................................12

        B.    Claims for Prospective Injunctive Relief (Including
                Counts II through XII) Do Not Meet the Limited
                Exception to Eleventh Amendment Immunity ........................13

        C.    Eleventh Amendment Bars Federal Court Enforcement
                of State Constitutional Provisions and Statutes ........................17

    II.    This Court Lacks Appellate Jurisdiction in Case No. 15-5961 .........20

    III.    If the District Court Did "Effectively Deny" Davis'
        Motion for Preliminary Injunction, It Was Correct in Doing So........27

A.    Davis Is Unlikely to Succeed on the Merits of the
       Third-Party Complaint ............................................................28

        1.    Davis is Unlikely to Succeed on Her Claims
               Against the State Appellees Because of
               Eleventh Amendment Immunity and Because
               She Lacks Standing ......................................................30

        2.    Davis is Unlikely to Succeed on Her Free Exercise
               Claim (Counts II, III, IV, V, VIII, IX, and X)...............31

        3.    Davis is Unlikely to Succeed on Her Free
               Speech Claim (Counts VI and XI)..................................40

        4.    Davis is Unlikely to Succeed on Her
               Religious Test Claim (Counts VII and XII) ..................43

B.    Davis Will Not Sustain Irreparable Harm
       Without the Requested Injunction Against
       the State Appellees...................................................................45

C.    The Requested Injunction May Cause Harm to
       Others and is Contrary to the Public Interest...........................45

IV.    State Appellees Do Not Take a Position on the Appeals
        in Case Nos. 15-5880 and 15-5978 ....................................................46

CONCLUSION...................................................................................................46

CERTIFICATE OF COMPLIANCE.........................................................................x

CERTIFICATE OF SERVICE ................................................................................xi

ADDENDUM ................................................................................................... xiii

Designation of Lower Court Documents.................................................... xiii

Beshear Letter [DE 34 at Exh. C, Page ID 782]............................................xv

# TABLE OF AUTHORITIES

## CASES

Allen v. Wright, 468 U.S. 737 (1984) .................................................................30

Brown v. Barkley, 628 S.W.2d 616 (Ky. 1982) .........................................15, 30, 35

Burwell v. Hobby Lobby Stores, Inc., 134 S.Ct. 2751 (2014) ...............................37

Cam I, Inc. v. Louisville/Jefferson County Metro Gov't,
    2007 Ky. App. LEXIS 370 (Ky. App. 2007)....................................................40

Cantwell v. Connecticut, 310 U.S. 296 (1940).......................................................32

Carson v. Am. Brands, Inc., 450 U.S. 79 (1981)....................................................22

Cedar Coal Co. v. United Mine Workers of Am.,
    560 F.2d 1153 (4th Cir. 1977) ................................................................ 24-25

Children's Healthcare is a Legal Duty v. Deters,
    92 F.3d 1412 (6th Cir. 1996) ...............................................................13, 14

Church v. the Lukumi Babalu Aye, Inc. v. City of Hialeah,
    508 U.S. 520 (1993)........................................................................................33

City of Boerne v. Flores, 521 U.S. 507 (1997)........................................................36

Clinton v. Jones, 520 U.S. 681 (1997).....................................................................21

Colorado River Water Conservation Dist. v. United States,
    424 U.S. 800 (1976)........................................................................................24

Edelman v. Jordan, 415 U.S. 651 (1974).................................................................12

Edwards v. Prime Inc., 602 F.3d 1276 (11th Cir. 2010)........................................22

Employment Division of Oregon Dep't of Human Resources v. Smith,
    494 U.S. 872 (1990)................................................................. 20, 33, 38-39

Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591 (2008) .............................42

Ex Parte Young, 209 U.S. 123 (1908) .........................................................13, 14, 17

FCC v. Beach Communications, 508 U.S. 307 (1993)...........................................35

Free Speech v. Fed. Election Comm'n, 720 F.3d 788 (10th Cir. 2013)...................9

G&V Lounge v. Mich. Liquor Control Comm'n, 23 F.3d 1071 (6th Cir. 1994)....46

Garcetti v. Ceballos, 547 U.S. 410 (2006)..............................................32, 39, 41, 42

Gibson v. McMurray, 159 F.3d 230 (6th Cir. 1998) .................................................18

Gingerich v. Commonwealth, 382 S.W.3d 835 (Ky. 2012) .......................33, 40, 43

Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271 (1988) .............23

Hafer v. Melo, 502 U.S. 21 (1991) ...........................................................................43

Harrill v. Blount County, 55 F.3d 1123 (6th Cir. 1995)..........................................19

Heller v. Doe, 509 U.S. 312 (1993) .........................................................................36

Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.,
    937 F. Supp. 2d 18 (D. D.C. 2013)...................................................................9

Landis v. N. Am. Co., 299 U.S. 248 (1936) ...........................................................23

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) .......................................30, 31

Marchi v. Board of Coop. Educ. Servs., 173 F.3d 469 (2d Cir. 1999)...................39

McCoy v. Louisiana State Board of Ed., 332 F.2d 915 (5th Cir. 1964).................24

McNeilly v. Land, 684 F.3d 611 (6th Cir. 2012).....................................................27

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1 (1982) ............24

Mosier v. Barren County Board of Health, 215 S.W.2d 967 (Ky. 1948)...............32

Munaf v. Geren, 553 U.S. 674 (2008) ....................................................27

Napolitano v. Ward, 317 F. Supp. 83 (N.D. Ill. 1970) ............................39

Obergefell v. Hodges, 135 S.Ct. 2584 (2015) ..................................*passim*

Papachristou v. Jacksonville, 405 U.S. 156 (1972) ...........................36, 46

Pearson v. Callahan, 555 U.S. 223 (2009).............................................11

Pennhurst v. Halderman, 465 U.S. 89 (1984)..........................................18

Pickering v. Board of Education, 391 U.S. 563 (1968)...........................42

Platt v. Board of Commissioners on Grievances & Discipline,
    769 F.3d 447 (6th Cir. 2014) .........................................................27

Reynolds v. United States, 98 U.S. 145 (1878) .......................................38

Russell v. Lundergan-Grimes, 784 F.3d 1037 (6th Cir. 2015)...........14, 17

Sandin v. Conner, 515 U.S. 472 (1995)..................................................18

Seger v. Ky. High School Athletic Ass'n, 453 Fed. Appx. 630 (6th Cir. 2011).....33

Shell Oil Co. v. Noel, 608 F.2d 208 (1st Cir. 1979)...............................14

Smith v. Reagan, 841 F.2d 28 (2d Cir. 1988)..........................................11

Texas Monthly, Inc. v. Bullock, 489 U.S. 1 (1989) ..........................36, 40

Top Flight Entertainment, Ltd. v. Schuette, 729 F.3d 623 (6th Cir. 2013).............13

Underwood v. Luoma, 107 Fed. Appx. 543 (6th Cir. 2004) ...................18

United States v. Lynd, 301 F.2d 818 (5th Cir. 1962) ..............................24

United States v. Price, 688 F.2d 204 (3d Cir. 1982)..................................8

United States Parole Comm'n v. Garaghty, 445 U.S. 388 (1980)...........31

Walker v. Texas Sons of Confederate Veterans, Inc., 135 S.Ct. 2239 (2015) ........41

Wilcher v. Akron, 498 F.3d 516 (6th Cir. 2007) ......................................................34

Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989).........................................12

Williamson v. Recovery Ltd. P'ship, 731 F.3d 608 (6th Cir. 2013) .......................22

Wilson v. Garcia, 471 U.S. 261 (1985) ...................................................................19

Wilson v. Morgan, 477 F.3d 326 (6th Cir. 2007) ....................................................19

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008)................................27

## CONSTITUTIONAL PROVISIONS

KY. CONST. § 1 ....................................................................................................32, 40

KY. CONST. § 3 ..........................................................................................................32

KY. CONST. § 5 ....................................................................................................32, 43

KY. CONST. § 8 ..........................................................................................................40

KY. CONST. § 99 ........................................................................................................15

KY. CONST. § 233A ......................................................................................................3

U.S. CONST. art. III, § 2 ............................................................................................30

U.S. CONST. art. VI....................................................................................................43, 44

U.S. CONST. amend. I .......................................................... 19, 31-32, 33, 37, 39, 40, 42

U.S. CONST. amend. XI ........................................................................ 2, 8, 10-20, 30

U.S. CONST. amend. XIV ......................................................................................28, 34

## STATUTES

28 U.S.C. § 1291 ..................................................................................21

28 U.S.C. § 1292 ............................................................................ 21-24

42 U.S.C. § 1983 ..................................................................................19

42 U.S.C. § 1988 ............................................................................19, 20

KRS Chapter 402 ..........................................................................3, 9, 38

KRS 402.080 ...................................................................................14, 16

KRS 402.100 ...........................................................................15, 16, 41, 44

KRS 402.110 .........................................................................................15

KRS 402.210 .........................................................................................15

KRS 402.230 .........................................................................................15

KRS 402.240 .........................................................................................15

KRS 446.350 .........................................................................17-20, 36-37

## OTHER AUTHORITIES

6 Cir. R. 26.1 ..........................................................................................i

Fed. R. App. P. 32 ...................................................................................x

Fed. R. Civ. P. 65 .................................................................................23

Moore's Federal Practice 3d § 203.10 .................................................24

## STATEMENT CONCERNING ORAL ARGUMENT

Given the importance of the issues and defenses raised in this appeal, the State Appellees respectfully request oral argument.

## STATEMENT OF JURISDICTION

This matter consolidates three interlocutory appeals. The case from which these appeals are taken remains pending with the District Court.

Case No. 15-5880 is the appeal of a preliminary injunction entered against Appellant Kim Davis in her capacity as the Rowan County Clerk ("Davis"). Case No. 15-5978 is the appeal of an Order finding Davis in contempt. While the State Appellees are named in these appeals, the issues do not directly involve them.

Case No. 15-5961 is the appeal of an Order staying briefing on Appellant Davis' Motion for Preliminary Injunction against the State Appellees. As more fully explained below, this Order is not appealable. Therefore, this Court does not have jurisdiction over the attempted appeal in Case No. 15-5961, and that appeal must be dismissed.[1]

---

[1] The State Appellees raised this argument by a Motion to Dismiss Appeal. This Court denied the motion without prejudice and passed it to the merits panel for further consideration. [6 Cir. DE 27, 37]. References to those documents in the record of this consolidated appeal are designated as "6 Cir. DE." Documents in the District Court record are designated as "DE."

## STATEMENT OF ISSUES

With respect to the State Appellees, the issues on appeal are:

1.     Whether the claims against the State Appellees are barred by the Eleventh
Amendment;

2.     Whether this Court has appellate jurisdiction in Case No. 15-5961; and

3.     If the District Court "effectively denied" Davis' Motion for Preliminary
Injunction, whether it was correct in doing so.

## STATEMENT OF THE CASE

These consolidated appeals arise from Davis' ongoing efforts to avoid compliance with Obergefell v. Hodges, 135 S.Ct. 2584 (2015). Davis is the elected Clerk of Rowan County, Kentucky, and, along with her deputy clerks, is statutorily responsible for issuing marriage licenses to qualified couples. See KRS Ch. 402. In Obergefell, the Supreme Court held that qualified same-sex couples cannot be excluded from marriage: "the State laws challenged by Petitioners in these cases are now held invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples." 135 S.Ct. at 2605. Obergefell did not invalidate any state marriage licensing schemes – it simply held that however a state chooses to issue marriage licenses, it must issue them on the same terms to same-sex couples. The only Kentucky laws invalidated by Obergefell are KY. CONST. § 233A and the statutory provisions that purport to limit marriage to opposite-sex couples. Otherwise, the statutes in KRS chapter 402 governing the issuance of marriage licenses remain in full effect.

Following Obergefell, Davis' office stopped issuing marriage licenses because she contends that issuing licenses to same-sex couples violates her rights to free exercise of religion, free speech, and to be free from religious tests for holding office. [See e.g. DE 29, Davis Response to Motion for Preliminary Injunction, Page ID 318-646]. Plaintiffs/Appellees ("Plaintiffs") are a group of

same-sex and opposite-sex couples residing in Rowan County who, on behalf of themselves and a putative class of similarly situated individuals, brought suit against Davis for unlawfully restricting exercise of their fundamental right of marriage. [DE 1, Complaint, Page ID 1].

On August 12, 2015, the District Court entered a preliminary injunction that enjoins Davis in her official capacity from applying her "no marriage licenses" policy. [DE 43, Memorandum Opinion and Order ("Preliminary Injunction"), Page ID 1146]. The District Court thoroughly analyzed each of Davis' constitutional arguments and found each to be without merit. [Id. at 16-28, Page ID 1161-73]. Davis filed an interlocutory appeal from the Preliminary Injunction, which is designated as Case No. 15-5880. [DE 44, Notice of Appeal, Page ID 1174].

On September 3, 2015, the District Court clarified the scope of the Preliminary Injunction, finding that Davis is enjoined from applying her "no marriage licenses" policy not just to the named Plaintiffs but to all qualified couples. [DE 74, Order ("Clarified Injunction"), Page ID 1557]. Davis amended her appeal in No. 15-5880 to include the Clarified Injunction. [DE 82, Amended Notice of Appeal, Page ID 1785]. Neither the Preliminary Injunction nor Clarified Injunction directs these State Appellees to take, or refrain from taking, any action.

After unsuccessfully moving the District Court to stay the Preliminary Injunction and Clarified Injunction, Davis sought the same relief in this Court. On August 26, 2015, this Court denied Davis' request for a stay of the Preliminary Injunction, finding that her position "cannot be defensibly argued" and that "[t]here is thus little or no likelihood" of success on appeal. [6 Cir. DE 28 at 3]. The United States Supreme Court likewise denied Davis' request for a stay of the Preliminary Injunction. [6 Cir. DE 30]. Davis has challenged the Clarified Injunction on procedural grounds, arguing the District Court was without jurisdiction to clarify injunctive relief while the Preliminary Injunction was on appeal. [Appellant Br. at Arg. III, p. 75]. This Court has twice denied Davis' request to stay the Clarified Injunction, finding the second time that the "likelihood of success on the merits of this appeal is not sufficiently strong to outweigh the remaining equitable factors. . . ." [6 Cir. DE 50, 62].

Davis defied the Preliminary Injunction by refusing to issue marriage licenses to qualified couples. [DE 67, Motion for Contempt, Page ID 1477-87]. On September 3, 2015, the District Court found Davis to be in contempt and remanded her to federal custody. [DE 75, Order, Page ID 1558-59]. On September 8, 2015, the District Court released Davis from custody after finding that Davis' deputy clerks would issue licenses and directing Davis not to interfere in their issuance. [DE 96, Order, Page ID 1899]. Davis has appealed from the

Order finding her in contempt, which is designated as Case No. 15-5978. [DE 83, Notice of Appeal, Page ID 1791]. This Court denied Davis' request to stay the contempt order, finding it "largely if not entirely" moot in light of her release from custody. [6 Cir. DE 39].

While defending against the Plaintiffs' claims, Davis impleaded the State Appellees by Third-Party Complaint on August 4, 2015. [DE 34, Third-Party Complaint, Page ID 745]. Davis alleges that "Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst" are unlawful, and she seeks declaratory and injunctive relief from these policies. [Id. at ¶¶ 46-147]. Davis contends that "Kentucky marriage policies" violate her rights of free exercise of religion, free speech, and constitute an unlawful religious test for holding office. [Id.]. Notably, these are the same constitutional allegations Davis raised as defenses to Plaintiffs' claims, which have been repeatedly rejected by the District Court, this Court, and the Supreme Court.

On August 7, 2015, Davis moved the District Court to enter a preliminary injunction against the State Appellees to enjoin them from enforcing the Governor's alleged "mandate" that Davis issue marriage licenses to authorized couples in conformity with Kentucky statute. [DE 39, Motion for Preliminary Injunction, Page ID 824-1130]. On August 25, 2015, the District Court *sua sponte*

ruled that briefing on Davis' motion for injunctive relief[2] is "stayed pending review of the Court's Memorandum Opinion and Order (Doc. #43) [Preliminary Injunction] by the United States Court of Appeals for the Sixth Circuit." [DE 58, Order, Page ID 1289]. The District Court undoubtedly recognized that Davis' arguments in support of her motion for injunctive relief were identical to those she made in response to Plaintiffs' motion for injunctive relief, which the Court thoughtfully analyzed at length. Thus, the District Court reasonably concluded that consideration of Davis' Motion for Preliminary Injunction against the State Appellees would be informed by this Court's ruling on the merits of Davis' constitutional defenses. The District Court directed that "a briefing schedule on the Motions will be set by subsequent order after the Sixth Circuit renders its decision." [Id.].

Contending that the District Court's briefing order constitutes a "denial" of her motion for injunctive relief, Davis appealed to this Court in the action designated Case No. 15-5961. [DE 66, Notice of Appeal, Page ID 1471-76]. Given that Davis has attempted to appeal from a plainly unappealable order, the State Appellees moved to dismiss Case No. 15-5961. [6 Cir. DE 27]. This Court denied the motion without prejudice and deferred consideration to a merits panel,

---

[2] The District Court also stayed briefing and consideration of Davis' Motion to Dismiss Plaintiffs' claims against her (DE 32, Motion to Dismiss, Page ID 663).

finding that the appealability question "is intertwined with the merits of the appeal."  [6 Cir. DE 37].

In the meantime, Davis requested that the District Court and this Court grant the requested injunctive relief against State Appellees pending appeal, and both courts denied her request.  [DE 103, Memorandum Order, Page ID 2175; 6 Cir. DE 37].  This Court observed that Davis had "not demonstrated a substantial likelihood of success on her federal constitutional claims" and that any claim under Kentucky state law is barred by the Eleventh Amendment.  [6 Cir. DE 37].

This Court has consolidated the three appeals for briefing and submission. [6 Cir. DE 54].

During the pendency of the appeals, the State Appellees timely responded to Davis' Third-Party Complaint with a Motion to Dismiss.  [DE 92, Motion to Dismiss Third-Party Complaint, Page ID 1845].  The motion asserts numerous grounds for dismissal, including Eleventh Amendment immunity, lack of standing, and failure to state a claim upon which relief can be granted.  State Appellees' dispositive motion has been fully briefed and is pending with the District Court. The pendency of this appeal does not divest the District Court of jurisdiction to decide the State Appellees' Motion to Dismiss.  United States v. Price, 688 F.2d 204, 215 (3d Cir. 1982) ("in an appeal from an order granting or denying a preliminary injunction, a district court may nevertheless proceed to determine the

action on the merits"); <u>accord</u> <u>Free Speech v. Fed. Election Comm'n</u>, 720 F.3d 788, 791-92 (10th Cir. 2013); <u>Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.</u>, 937 F. Supp. 2d 18, 26 (D. D.C. 2013).

After she was released from custody, Davis confiscated the prescribed marriage license forms and provided Deputy Clerk Brian Mason ("Mason") forms that had been altered. [DE 114, Notice, Page ID 2293]. Davis directed Mason to issue marriage licenses using the altered forms. [<u>Id.</u>]. The altered form differs from the prescribed form in some respects, including the removal of any identification that such licenses were issued by the Office of Rowan County Clerk. [DE 148, Response to Motion to Enforce, Page ID 2551]. Plaintiffs have challenged the validity of the licenses issued on the altered form, contending that Davis has failed to comply with the Preliminary Injunction and Clarified Injunction. [DE 120, Motion to Enforce, Page ID 2312]. As directed by the District Court, the State Appellees have provided their analysis of this issue, noting that while the altered licenses are inconsistent with KRS Chapter 402, marriages properly solemnized pursuant to the altered licenses are valid. [DE 148, Response to Motion to Enforce, Page ID 2551]. Plaintiffs' motion is pending with the District Court.

## SUMMARY OF THE ARGUMENT

The claims against the State Appellees are barred by the Eleventh Amendment.  Davis does not dispute that any claim other than for prospective injunctive relief is barred.  The claims for prospective injunctive relief are barred because the State Appellees are not responsible for enforcing the provisions about which Davis complains and because the federal courts do not have jurisdiction to enter injunctive relief to enforce state statutes and constitutional provisions.

This Court does not have appellate jurisdiction in Case No. 15-5961 because the Order appealed from did not deny or refuse an injunction but rather temporarily stayed briefing on Davis' Motion for Preliminary Injunction.

If this Court concludes the District Court "effectively denied" Davis' Motion for Preliminary Injunction, the District Court's action was correct because Davis is not entitled to an injunction.  Davis is unlikely to succeed on the merits of her claim against the State Appellees because of the Eleventh Amendment and a lack of standing.  Moreover, Davis is unlikely to succeed on her free exercise of religion, free speech, and religious test claims.  In addition, Davis will not sustain irreparable harm without the requested injunction; issuance of it may harm others and is contrary to the public interest.

## ARGUMENT

I.  **The Claims Against State Appellees Are Barred by Eleventh Amendment Immunity.**

The Eleventh Amendment to the United States Constitution confers immunity upon the State Appellees barring the claims asserted against them. The State Appellees have raised their Eleventh Amendment protection in a Motion to Dismiss that is fully briefed and pending before the District Court. [DE 92, Motion to Dismiss Third-Party Complaint, Page ID 1845]. In denying Davis' request for a stay pending appeal, both the District Court and this Court found that the claims against the State Appellees are barred, at least in part, by the Eleventh Amendment. [DE 103, Memorandum Order, Page ID 2175; DE 37].

The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 232 (2009). The state "has a right to an early determination of the issue because the essence of the immunity is the possessor's right not to be haled into court – a right that cannot be vindicated after trial." Smith v. Reagan, 841 F.2d 28, 30 (2d Cir. 1988) (citation omitted). The Court must decide the issue of immunity at the earliest possible opportunity in order "to lift the burdens of litigation from a defendant who should not be a party at all." Id.

### A.    Requested Relief Other than Injunctive (Including Count I and Claims for Indemnity) Are Barred by the Eleventh Amendment.

Davis' claims against Governor Beshear and Commissioner Onkst for any relief other than injunctive relief are barred by the Eleventh Amendment to the United States Constitution.   The Eleventh Amendment provides that an "unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."  Edelman v. Jordan, 415 U.S. 651, 663 (1974).  Davis asserts claims against the State Appellees solely in their official capacities.  [DE 34, Third-Party Complaint, Page ID 745].  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citation omitted).  "As such, it is no different from a suit against the State itself."  Id.  Davis' claims against Governor Beshear and Commissioner Onkst are, therefore, claims against the Commonwealth of Kentucky.

To the extent the Third-Party Complaint seeks relief other than injunctive relief, such claims are barred by the Eleventh Amendment and must be dismissed. Davis did not dispute this in her Response to the Motion to Dismiss.  [DE 123, Response to Motion to Dismiss at 16, Page ID 2360].

**B.    Claims for Prospective Injunctive Relief (Including Counts II through XII) Do Not Meet the Limited Exception to Eleventh Amendment Immunity.**

The Supreme Court has recognized a limited exception to Eleventh Amendment in suits against state officers for prospective injunctive relief.  Ex Parte Young, 209 U.S. 123 (1908).  But, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party."  Id. at 157.  "A plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations."  Top Flight Entertainment, Ltd. v. Schuette, 729 F.3d 623, 634 (6th Cir. 2013).  "Courts have not read Young expansively."  Children's Healthcare is a Legal Duty v. Deters, 92 F.3d 1412, 1415 (6th Cir. 1996) (citations omitted).

In order for the Ex Parte Young exception to apply, the official capacity suit must seek to enjoin actual or threatened action by a state official with authority to take such action.  Id. at 1416 (finding a suit against the Ohio Attorney General is barred by the Eleventh Amendment in part because she was not the official charged with enforcing the challenged statute).  "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to

13

litigation challenging the law." Id. (citation omitted). "Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend Young beyond what the Supreme Court has intended and held." Id. "The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." Shell Oil Co. v. Noel, 608 F.2d 208, 211 (1st Cir. 1979). "Young does not reach state officials who lack a special relation to the particular statue and are not expressly directed to see to its enforcement." Russell v. Lundergan-Grimes, 784 F.3d 1037, 1047 (6th Cir. 2015) (citation omitted). "And it requires more than a bare connection to administering a statute." Id.

Davis' allegations notwithstanding, neither Governor Beshear nor Commissioner Onkst is responsible for setting or enforcing "Kentucky's marriage policies," and neither has authority to compel Davis to act. Davis herself concedes that marriage policies are set forth in Kentucky statute. [DE 34, Third-Party Complaint at ¶¶ 9-11, Page ID 748]. Those statutes place the sole responsibility for issuing marriage licenses solely with the county clerks or their deputy clerks. KRS 402.080 ("[t]he license shall be issued by the clerk of the county . . ."); see

also KRS 402.100, 402.110, 402.210, 402.230.[3]    In Kentucky, county clerks are constitutional officers elected by the citizens of each county.  KY. CONST. § 99. Under Kentucky law, the Governor does not possess supervisory authority over other elected constitutional officers.  See Brown v. Barkley, 628 S.W.2d 616, 618 (Ky. 1982).

State Appellees' limited involvement in the marriage licensing regime relates only to the marriage license form.  KRS 402.100 directs the Department for Libraries and Archives ("KDLA") to prescribe the form used for marriage licenses and certificates and includes instruction for its content.  KDLA, under the authority of Commissioner Onkst, updated the form in light of Obergefell v. Hodges, 135 S.Ct. 2584 (2015) by replacing the words "bride" and "groom" with "first party" and "second party."  [Compare DE 34 at Exh. A, Page ID 778 (pre-Obergefell form) with DE 34 at Exh. D, Page ID 784 (post-Obergefell form)].  Davis does not allege that the updated marriage license form fails to comply with KRS 402.100 or that the form was otherwise incorrectly drafted.  Updating the form was the proper exercise of executive authority in light of the change in the law resulting from Obergefell.

---

[3] In the limited circumstance in which the county clerk is absent or his/her office vacant, then the county judge/executive may issue a marriage license.  See KRS 402.240.  Otherwise, Kentucky statute authorizes only county clerks and their deputies to issue marriage licenses.

Updating a license form in response to a final and binding decision of the United States Supreme Court does not confer responsibility for Kentucky's "marriage policies" upon Governor Beshear and Commissioner Onkst. Responsibility for execution of Kentucky's marriage licensing statutes remains where it has always been—in the office of each county clerk. State appellees have no role in the enforcement or application of the marriage licensing statutes other than providing the form.

Moreover, Davis is wrong to characterize the District Court's ruling as creating a new right to "on demand" marriage in the county of one's choice. [Appellant Br. at 38]. <u>Obergefell</u> did not affect states' chosen processes for issuing marriage licenses. Rather, the Supreme Court simply held that however a state elects to issue marriage licenses, it must do so for both same-sex and opposite-sex couples. 135 S.Ct. at 2605. The Kentucky General Assembly has chosen to place exclusive authority for the issuance of marriage licenses with the county clerks and has chosen to authorize most eligible couples[4] to obtain a license in any county. KRS 402.080, 402.100. The elected legislature created the marriage licensing

---

[4] Davis fails to appreciate KRS 402.080, which requires that "[t]he [marriage] license shall be issued by the clerk of the county in which the female resides at the time, unless the female is eighteen (18) years of age or over or a widow, and the license is issued on her application in person or by writing signed by her, in which case it may be issued by any county clerk." Thus, while most eligible couples may obtain a marriage license from any county clerk, Rowan County couples in which the female spouse(s) is under the age of 18 must obtain their license from the Office of the Rowan County Clerk.

scheme, and it survives <u>Obergefell</u> fully intact.  The District Court did not create any new right to a marriage license.[5]

In reality, Davis' quarrel is not with Kentucky's "marriage policies" "effected by Governor Beshear and Commissioner Onkst" but rather with the <u>Obergefell</u> decision itself.  A lawsuit against the State Appellees is not the appropriate mechanism by which Davis may lodge her displeasure with the United States Supreme Court.  State Appellees do not have the requisite "special relation" to Kentucky marriage statutes and are not "expressly directed to see to [their] enforcement" thus permitting a claim that falls within the <u>Ex Parte Young</u> exception to absolute immunity.  <u>Russell</u>, 784 F.3d at 1047.  Accordingly, claims against the State Appellees are barred by the Eleventh Amendment.

### C.    The Eleventh Amendment Bars Federal Court Enforcement of State Constitutional Provisions and Statutes.

Davis claims that "Kentucky's marriage policies" run afoul of KRS 446.350, Kentucky's Religious Freedom Restoration Act ("RFRA").  [DE 34, Third-Party Complaint at Count II, Page ID 759].  Kentucky's RFRA provides that an act motivated by a sincerely-held religious belief "may not be substantially burdened" unless the government shows a compelling government interest furthered in the

---

[5] Davis' repeated assertion that an exception should be made to permit her to refuse to issue marriage licenses because there are many other county clerks within driving distance misses the point.  Her obligation as a constitutionally elected official to issue marriage licenses is required by statute.

least restrictive means.  KRS 446.350.  However, the Eleventh Amendment bars any federal court claim for enforcement of state constitutional provisions and state statutes such as KRS 446.350.  Pennhurst v. Halderman, 465 U.S. 89, 106 (1984).  Davis seeks to subvert this black-letter law by attempting to elevate KRS 446.350 to federal law.  This attempt fails.

First, KRS 446.350 does not create a liberty interest giving rise to a procedural due process right.  For such a right to exist, a statute must contain "explicitly mandatory language in connection with requiring specific substantive predicates."  Gibson v. McMurray, 159 F.3d 230, 233 (6th Cir. 1998) (citation omitted).  The statute must also "mandate[] a specific outcome if the substantive predicates are met."  Id.  Where those requisites are met, the claimant's liberty may not be deprived without due process of law.  Underwood v. Luoma, 107 Fed. Appx. 543, 545 (6th Cir. 2004).  Davis cites no authority for the proposition that KRS 446.350 creates any liberty interest.  KRS 446.350 does not require any mandatory action on the part of a government actor with specific outcomes so as to create a procedural due process right.[6]  Further, any liberty interest Davis might

---

[6] Instead, she relies upon cases in which criminal defendants and prisoners claimed a liberty interest as a result of a statute or regulation requiring a government actor to allow certain things such as a paperback dictionary, court-appointed expert, or certain mail items.  [DE 123, Response to Motion to Dismiss at 17, Page ID 2361].  These authorities are inapplicable to a statute that purports simply to establish a standard of review.  Moreover, the analysis in these prisoner cases was abrogated in part by Sandin v. Conner, 515 U.S. 472 (1995).

possibly have as a private citizen does not extend to her role as a governmental official.  Even if KRS 446.350 were somehow to apply to Davis, it cannot apply in her official capacity as the Rowan County Clerk because accommodating her in the manner she suggests would amount to a violation of the Establishment Clause.

Second, 42 U.S.C. § 1988(a) does not apply.  That statute provides that federal law generally governs claims pursuant to 42 U.S.C. § 1983, but state law may be borrowed for an issue on which the federal law is silent and not inconsistent.  The statute is essentially a gap-filler to ensure there are remedies to enforce federal rights.  Wilson v. Garcia, 471 U.S. 261, 269 (1985).  "Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action."  Id.  The express terms of section 1988(a) prohibit a court from "replacing federal law with more favorable state law."  Wilson v. Morgan, 477 F.3d 326, 332-33 (6th Cir. 2007).  States cannot create federal constitutional rights actionable under section 1983.  Harrill v. Blount County, 55 F.3d 1123, 1125-26 (6th Cir. 1995).  Here, KRS 446.350 is plainly inconsistent with federal law because it purports to subject government action to scrutiny more rigorous than that required under federal law.  The statute purports to require a government to show "by clear and convincing evidence" that its action furthers a "compelling governmental interest" in "the least restrictive means."  KRS 446.350.  However,

federal law requires that such government action meet only rational basis review. See Employment Division of Oregon Dep't of Human Resources v. Smith, 494 U.S. 872 (1990). Therefore, because KRS 446.350 is inconsistent with federal law, it cannot be borrowed pursuant to 42 U.S.C. § 1988(a). Davis fails in her attempt to elevate KRS 446.350 into a federal claim.

All of Davis' claims against the State Appellees are barred by the Eleventh Amendment and, therefore, must be dismissed.

## II. This Court Lacks Appellate Jurisdiction in Case No. 15-5961

Davis contends the District Court "effectively denied" her Motion for Preliminary Injunction against the State Appellees. [Appellant Br. at 4]. This is incorrect. The District Court Order of August 25, 2015 (hereinafter "August 25 Order") from which Davis attempts to appeal is a routine case management order. [DE 58, Order, Page ID 1289]. The District Court merely stayed briefing on Davis' Motion for Preliminary Injunction until this Court rules upon the appeal of Preliminary Injunction entered against Davis. [Id.] This was an appropriate exercise of the District Court's discretion, as Davis' Motion for Preliminary Injunction sought an Order requiring the State Appellees to exempt her from complying with the Preliminary Injunction.

Aside from the obvious fact that the State Appellees cannot excuse Davis from complying with a Court Order, the District Court clearly recognized that

Davis' Motion for Preliminary Injunction affirmatively raised the identical constitutional issues she asserted as defenses to Plaintiffs' Motion for Preliminary Injunction.   It was a prudent act of judicial discretion to await this Court's guidance before the District Court proceeded to Davis' Motion for Preliminary Injunction.  The August 25 Order certainly did not constitute a denial of injunctive relief.  Because the August 25 Order is a non-appealable interlocutory order, the attempted appeal from it must be dismissed.

Generally, this Court has appellate jurisdiction over only final decisions of the district courts.  28 U.S.C. § 1291.  A party may seek appellate review of interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions. . . ."  28 U.S.C. § 1292(a)(1).  The August 25 Order does none of those things.  Rather, it simply sets the process by which the District Court will consider Davis' Motion for Preliminary Injunction.  It cannot be questioned that "a district court has broad discretion to stay proceedings as an incident to its power to control its own docket."  Clinton v. Jones, 520 U.S. 681, 707 (1997).  Davis has cited no authority that requires a court to consider a motion for preliminary injunction at a certain time or in a certain sequence.

It is true that an order need not expressly state "injunction denied" to be appealable under section 1292(a)(1).  But if it does not, Davis must establish the

following in order for this Court to have jurisdiction: 1) the order has the "practical effect" of granting or refusing an injunction; 2) the order has a "serious, perhaps irreparable, consequence"; *and* 3) the order "can be effectively challenged only by means of an immediate appeal." Williamson v. Recovery Ltd. P'ship, 731 F.3d 608, 621 (6th Cir. 2013) (citations omitted). Davis has failed to make this showing. The Supreme Court has explained that 28 U.S.C. § 1292(a)(1) must be narrowly construed to keep with "the general congressional policy against piecemeal review." Carson v. Am. Brands, Inc., 450 U.S. 79, 84 (1981). In order to invoke appellate review, the litigant must "show more than that the order has the practical effect of refusing an injunction." Id. That is because section 1292(a)(1) is not "a golden ticket litigants can use to take any decision affecting injunctive relief on a trip to the court of appeals." Edwards v. Prime Inc., 602 F.3d 1276, 1290 (11th Cir. 2010).

First, the August 25 Order does not have the practical effect of denying Davis' Motion for Preliminary Injunction. Davis' Motion for Preliminary Injunction asserts ***the identical constitutional arguments*** she raised in opposition to Plaintiffs' Motion for Preliminary Injunction. [Compare DE 29, Davis Response to Motion for Preliminary Injunction, Page ID 318-646 with DE 39, Davis Motion for Preliminary Injunction, Page ID 824-1130]. The District Court thoughtfully analyzed those constitutional arguments, and its ruling is now on

appeal to this Court in Case No. 15-5880.  [DE 43, Memorandum Opinion and Order, Page ID 1146-73].  The August 25 Order merely delayed *reconsideration* of Davis' arguments to give this Court an opportunity to issue a potentially dispositive ruling.  The August 25 Order did not "practically deny" Davis' requested injunction but rather temporarily stayed ***re***consideration of her arguments as a matter of judicial economy.

In reality, it is not that the District Court denied Davis' motion but that it did not decide it as quickly as Davis wishes.  Davis has not cited a single authority that requires the District Court to decide a motion for preliminary injunction within a specified deadline.  Indeed, there is no such deadline.  See Fed. R. Civ. P. 65. Meanwhile, the District Court's wide discretion includes the authority to stay one proceeding while a potentially dispositive issue of law is decided in another proceeding.  See, e.g. Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936). "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."  Id. at 256.  The Supreme Court has made clear that an order such as this "that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 279 (1988).

A leading legal scholar has summarized the law in this area, concluding that "[g]enerally speaking, a stay of proceedings in an action does not involve a determination of a substantive issue, and therefore it is not appealable as an injunction pursuant to § 1292(a)(1)."    Moore's Federal Practice 3d at § 203.10[6][b][i].  As Moore's points out, there is an exception where the trial court stays an action pursuant to the *Colorado River* or another recognized abstention doctrine, as such stays "effectively terminate[] the action."  <u>Id.</u>; <u>see</u> <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.</u>, 460 U.S. 1, 11-13 (1982).  In such cases, a stay may be deemed to have denied a requested injunction.  Here, the August 25 Order does not involve application of any such abstention doctrine.

A stay may also constitute a denial of an injunction where the District Court's action is a blatant refusal to rule on a motion for preliminary injunction in a conscious attempt to effectively deny the requested relief.  In <u>United States v. Lynd</u>, 301 F.2d 818 (5th Cir. 1962), the district court entertained a motion to enjoin a county registrar to make voter registration records available for inspection pursuant to the Civil Rights Act but failed to issue a ruling.  Similarly, in <u>McCoy v. Louisiana State Board of Ed.</u>, 332 F.2d 915 (5th Cir. 1964), the district court held a hearing on the petitioner's motion to enjoin a state university from applying its whites-only admissions policy but failed to rule.  And in <u>Cedar Coal Co. v. United Mine Workers of Am.</u>, 560 F.2d 1153, 1161 (4th Cir. 1977), the trial court

"continued the hearing on the preliminary injunction indefinitely," which the Fourth Circuit found "may only be construed as a conscious denial" of the requested relief.

Here, the August 25 Order does not evidence any intention on the part of the District Court to silently deny Davis' Motion for Preliminary Injunction through inaction. To the contrary, the District Court has already analyzed Davis' constitutional arguments, which are now on appeal to this Court in Case No. 15-5880. Since Davis' Motion for Preliminary Injunction involved the identical constitutional arguments, the District Court rightfully elected to first have this Court's decision, which may be dispositive. This is an entirely reasonable approach for the District Court to take under these circumstances. Davis cites no authority for the proposition that an order merely delaying consideration of a motion for injunctive relief constitutes a denial or refusal of such relief.

Second, the August 25 Order does not have a "serious, perhaps irreparable, consequence." Davis' Motion for Preliminary Injunction seeks to enjoin the State Appellees from enforcing their alleged "mandate" that Davis issue marriage licenses to authorized couples. [DE 39, Motion for Preliminary Injunction, Page ID 824]. However, Davis is already under a separate legal obligation and injunction to issue marriage licenses to authorized couples, and she has exhausted all efforts to have the effect of the injunction orders stayed. Thus, even if Davis'

Motion for Preliminary Injunction against the State Appellees were granted, she would still have to issue marriage licenses. That obligation would continue unless and until this Court dissolves the preliminary injunction in Case No. 15-5880 – no doubt precisely the reason the District Court ordered consideration of Davis' motion temporarily stayed. The August 25 Order has exactly the opposite of an irreparable consequence – it has no consequence to Davis at all. Davis' real quarrel is with the Preliminary Injunction that requires her to issue marriage licenses. Davis' only remedy is by appeal of that injunction, not moving the District Court for an injunction to do the opposite.[7]

Third, Davis does not require an immediate appeal of the August 25 Order in order to effectively challenge the District Court's analysis of her constitutional claims. As explained above, the identical constitutional claims Davis asserts in her Motion for Preliminary Injunction were considered and rejected by the District Court in ruling upon Plaintiffs' Motion for Preliminary Injunction. Those issues are now on appeal to this Court in Case No. 15-5880. There is absolutely no need for Davis to pursue this appeal of a briefing/scheduling order in order to obtain review of her constitutional arguments.

---

[7] Moreover, an injunction against the State Appellees cannot grant Davis any relief. The State Appellees have no supervisory authority over another elected official such as Davis and have no ability to exempt her from the statutory obligation to issue marriage licenses.

Because the August 25 Order is a non-appealable interlocutory order, the appeal in Case No. 15-5961 must be dismissed.

## III.    If the District Court Did "Effectively Deny" Davis' Motion for Preliminary Injunction, It Was Correct in Doing So.

As set out above, the District Court did not deny or otherwise rule upon Davis' Motion for Preliminary Injunction, and therefore this Court is without appellate jurisdiction over that motion.  However, in the event this Court concludes that the August 25 Order "effectively denied" Davis' Motion for Preliminary Injunction as she alleges, the District Court was correct to deny injunctive relief.

This Court reviews a ruling on preliminary injunctive relief for an abuse of discretion.  Platt v. Board of Commissioners on Grievances & Discipline, 769 F.3d 447, 454 (6th Cir. 2014).  Preliminary injunctions are "extraordinary and drastic remed[ies]."  Munaf v. Geren, 553 U.S. 674, 689-90 (2008).  The moving party bears the burden of justifying relief.  McNeilly v. Land, 684 F.3d 611, 615 (6th Cir. 2012).  In order for the District Court to exercise its discretion to enter a preliminary injunction, the movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  The District Court's legal conclusions used in determining the likelihood of success are reviewed de novo on appeal.  Platt, 769 F.3d at 454.

## A.    Davis Is Unlikely to Succeed on the Merits of the Third-Party Complaint.

Davis alleges that "Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst" are unlawful, and she seeks declaratory and injunctive relief from these policies.  [DE 34, Third-Party Complaint at ¶¶ 46-147, Page ID 759-73].  Davis contends that "Kentucky marriage policies" violate her rights of free exercise of religion, free speech, and constitute an unlawful religious test for holding office.  [Id.].

The alleged "marriage policies" "effected by Governor Beshear and Commissioner Onkst" at issue are statements contained in a June 26, 2015 letter from Governor Beshear (hereinafter "Beshear Letter") to Kentucky's elected county clerks.  [Id. at ¶ 25, Page ID 753 and Exh. C, Page ID 782 (attached supra Addendum at xiv)].  Davis misstates the Beshear Letter by taking quotes out of context and failing to provide the full citation in a way that manipulates the text.  [Appellant Br. at 9-10].  In reality, the Beshear Letter is simply an announcement of the Obergefell decision and the Executive Branch's efforts to comply with it.  It correctly states that "the United States Supreme Court issued its decision regarding the constitutionality of states' bans on same-sex marriage" and "struck down those laws, finding that they were invalid under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution."  [Id.].  The Beshear Letter announces that, in accordance with the Obergefell v. Hodges, 135 S.Ct.

2584 (2015) decision, "Kentucky will recognize as valid all same sex marriages performed in other states and in Kentucky." [Id.].  The Governor stated that "all executive branch agencies are already working to make any operational changes that will be necessary to implement the Supreme Court decision." [Id.].  Further, the Beshear Letter states that "the Department of Libraries and Archives will be sending a gender-neutral form to you today, along with instructions for its use." [Id.].  Notably, the Beshear Letter does not instruct Davis or any other county clerk to do anything. [Id.].  In fact, the Governor notes that county clerks "should consult with your county attorney on any particular aspects related to the implementation of the Supreme Court's decision." [Id.].

Thus, Davis' allegation that "Governor Beshear took it upon himself after Obergefell to set and announce new Kentucky marriage license policies, and command county clerks to abide by such policies" is demonstrably false. [Id. at ¶ 33, Page ID 756].  The Beshear Letter does not command Davis to do anything. The Governor issues policy directives only through executive orders, which Davis concedes the Beshear Letter was not. [Appellant Br. at 49-50].  Rather, it is an acknowledgement of Obergefell, an explanation of the Commonwealth's actions to assist the county clerks with their statutory duties, and a reminder to the county clerks of their obligations as constitutional officers.  Davis' legal responsibilities resulting from the Obergefell decision are wholly unaffected by the issuance of the

Beshear Letter. Indeed, Davis would be in exactly the same position she is today had the Beshear Letter never been transmitted.

> **1.      Davis is Unlikely to Succeed on Her Claims Against the State Appellees Because of Eleventh Amendment Immunity and Because She Lacks Standing.**

Davis cannot succeed on her claims against the State Appellees because those claims are barred by the Eleventh Amendment as set forth in Argument § I above. In addition, Davis' claims against the State Appellees are barred because she lacks standing.

Standing is "perhaps the most important" of jurisdictional principles, as it ensures that the federal courts confine decisions to actual "cases or controversies" as defined in Article III of the Constitution. Allen v. Wright, 468 U.S. 737, 751 (1984). A claimant lacks standing where there is no causal connection between the injury and the defendant's conduct or where the injury is not redressable by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Davis has failed to meet her burden of demonstrating either prong.

The Beshear Letter did not cause Davis' alleged constitutional injury. The State Appellees did not and cannot compel an elected constitutional officer such as Davis to act. See Brown v. Barkley, 628 S.W.2d 616, 618 (Ky. 1982). Davis has not cited a single authority to establish that the State Appellees exercise authority over her. In reality, Davis' injury as she has alleged it is traceable solely to the

Obergefell decision, which held that marriage licenses must be issued to same-sex couples on the same terms as opposite-sex couples.  The State Appellees do not possess the authority to either compel or excuse Davis from complying with Supreme Court precedent or the statutory framework for issuing marriage licenses.

In addition to a lack of causal connection, Davis lacks standing because her alleged injury is not redressable by a favorable decision and is moot.  Lujan, 504 U.S. 560-61; United States Parole Comm'n v. Garaghty, 445 U.S. 388, 396-97 (1980).  Obergefell makes clear that Davis has an obligation to issue marriage licenses to same-sex couples on identical terms as opposite-sex couples.  The District Court so held and ordered Davis to do just that.  [DE 43, Memorandum Opinion and Order, Page ID 1146].  If Davis were successful in her claim against the State Appellees to enjoin the Beshear Letter, Davis would still be required by the U.S. Supreme Court decision in Obergefell and the District Court Order to issue marriage licenses to same-sex couples.  This reality highlights the fact that Davis' real quarrel is with Obergefell itself and not with any action or inaction on the part of the State Appellees.

### 2.    *Davis is Unlikely to Succeed on Her Free Exercise Claim (Counts II, III, IV, V, VIII, IX, and X).*

Davis claims that "Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst" and set out in the Beshear Letter violate her right to free exercise of religion guaranteed by the First Amendment to the U.S.

Constitution and Sections 1, 3, and 5 of the Kentucky Constitution. [DE 34, Third-Party Complaint at Counts II, III, IV, V, VIII, IX, and X, Page ID 759-71]. The District Court correctly rejected Davis' arguments in the context of Plaintiffs' Motion for Preliminary Injunction. [DE 43, Memorandum Opinion and Order, Page ID 1146.]

The right to free exercise of religion includes both the freedom to believe and the freedom to act. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940). The freedom to believe is absolute, but the freedom to act is "subject to regulation for the protection of society." Id. The constitutional guarantee of free exercise of religion does not authorize religious conduct that interferes with the rights of others or is detrimental to the public. See Mosier v. Barren County Board of Health, 215 S.W.2d 967, 969 (Ky. 1948). The Supreme Court has made clear that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." Garcetti v. Ceballos, 547 U.S. 410, 419 (2006) (citation omitted). Simply put, Kim Davis as a citizen has a greater right to free exercise than does Kim Davis as Rowan County Clerk. As Rowan County Clerk, Kim Davis *is* the government.

In assessing a challenge to government action that interferes with the free exercise of religion, the Court must first determine whether the action is neutral and generally applicable on the one hand, or targets religion on the other hand.

Employment Division of Oregon Dep't of Human Resources v. Smith, 494 U.S. 872 (1990); Church v. the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520 (1993).   Government action that targets religion must meet strict scrutiny, while action that is neutral and generally applicable need only pass a rational basis review.   Id.; see also Seger v. Ky. High School Athletic Ass'n, 453 Fed. Appx. 630, 634 (6th Cir. 2011).   The analysis under the Kentucky Constitution is identical, as the Kentucky Supreme Court has held that the Kentucky Constitution provides no greater free exercise than the First Amendment to the United States Constitution.   Gingerich v. Commonwealth, 382 S.W.3d 835, 844 (Ky. 2012).

But first, there must be evidence of "government action."   The Beshear Letter and the marriage license form do not constitute "government action" that could support Davis' claims of religious infringement because they do not require Davis to do anything.   Accordingly, the inquiry ends there.

As explained above, Governor Beshear and Commissioner Onkst do not have authority over the issuance of marriage licenses, and they cannot compel an elected county clerk such as Davis to act in particular manner with respect to marriage licensing.   Therefore, the "marriage policies" allegedly stated in the Beshear Letter do not constitute government action as to Davis.   The federal courts and federal law – not the State Appellees – compel Davis to issue marriage licenses to qualified applicants pursuant to her statutory duties.   [DE 43,

Memorandum Opinion and Order, Page ID 1146; Obergefell v. Hodges, 135 S.Ct. 2584 (2015)]. Indeed, even if the Beshear Letter had never been transmitted and the marriage license form had never been revised, Davis would nevertheless be legally bound to issue marriage licenses to all qualified couples regardless of their sexual orientation. Obergefell makes this clear: the Commonwealth cannot refuse a marriage license to an otherwise qualified same-sex couple. The Beshear Letter is not the cause of Davis' alleged injury. Without government action on the part of the State Appellees, Davis has no claim against them for violation of her right of free exercise. See, e.g. Wilcher v. Akron, 498 F.3d 516 (6th Cir. 2007).

Even if the Beshear Letter did somehow constitute government action as applied to Davis, it is clearly neutral and generally applicable. The Beshear Letter correctly announced that "the United States Supreme Court issued its decision regarding the constitutionality of states' bans on same-sex marriage" and "struck down those laws, finding that they were invalid under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." [DE 34, Exh. C, Page ID 782]. As directed by the Supreme Court, Governor Beshear stated that "Kentucky will *recognize* as valid all same sex marriages performed in other states and in Kentucky" that "all *executive branch agencies* are already working to make any operational changes that will be necessary to implement the Supreme Court decision." [Id. (emphasis added)]. With regard to county clerks such as Davis,

Governor Beshear simply stated that, as required by statute, "the Department of Libraries and Archives will be sending a gender-neutral form to you" and that clerks "should consult with [their] county attorney on any particular aspects related to the implementation of the Supreme Court's decision." [Id.]. This alleged "policy" neither facially nor practically targets religion[8] but instead explains the Executive Branch's uniform response to a binding decision of the United States Supreme Court.

Having shown that the Beshear Letter is neutral and generally applicable, it easily passes rational basis examination. Government action subject to rational basis review is accorded a strong presumption of validity. FCC v. Beach Communications, 508 U.S. 307, 314 (1993). To pass, the action need only be "rationally related to furthering a legitimate state interest." Seger, 453 Fed. Appx. at 635. Davis bears "the burden to negative every conceivable basis which might support it." Beach Communications, 508 U.S. at 315. The government, on the

---

[8] Davis' attempt to demonstrate that the Beshear Letter targets religion rests on nothing more than conclusory allegations. [DE 34, Third-Party Complaint at ¶ 34, Page ID 756]. Davis' allegation that Governor Beshear granted an "exemption" "to Attorney General Conway when he was unwilling to defend Kentucky's marriage laws" is nonsensical. Id. The Governor of Kentucky does not possess supervisory authority over the Attorney General. See Brown v. Barkley, 628 S.W.2d 616, 618 (Ky. 1982). Attorney General Conway's decision to stop defending Kentucky's same-sex marriage ban was an exercise of discretion with respect to an unsettled legal question, as the District Court noted. [DE 43, Memorandum Opinion and Order at 20, Page ID 1165]. That legal question is no longer unsettled.

other hand, "has no obligation to produce evidence to sustain the rationality" of the challenged action. Heller v. Doe, 509 U.S. 312, 320 (1993).

Here, the Beshear Letter unquestionably furthers the important government interest in the orderly and uniform application of the rule of law. See, e.g. Papachristou v. Jacksonville, 405 U.S. 156, 171 (1972) ("The rule of law, evenly applied . . . is the great mucilage that holds society together."); Texas Monthly, Inc. v. Bullock, 489 U.S. 1 (1989) (government has interest in uniform application of laws). As this Court has already expressly recognized, the Beshear Letter "also rationally relates to several narrow interests identified in Obergefell," such as "individual autonomy" and allowing "same sex-couples to take advantage of the many societal benefits [or marriage] and foster[ing] stability for their children." [DE 43, Memorandum Opinion and Order at 21, Page ID 1166]. Because the Beshear Letter is rationally related to a legitimate state interest, Davis' free exercise of religion claims fail as a matter of law.

Davis claims that Kentucky's RFRA subjects all government action that in any way affects the free exercise of religion to strict scrutiny. KRS 446.350. RFRAs were enacted in an attempt to prohibit government from burdening individuals' free exercise of religion. City of Boerne v. Flores, 521 U.S. 507, 515-16 (1997). However, interpreting statutes such as KRS 446.350 to apply to free exercise by public officials acting in their official capacities would run directly into

the Establishment Clause, which prohibits governments from favoring or promoting one set of religious beliefs over another.  Davis' resort to Burwell v. Hobby Lobby Stores, Inc., 134 S.Ct. 2751, 2768 (2014), fails for that reason. While the Supreme Court held in Hobby Lobby that the religious beliefs of a private corporation's owners may be attributed to the corporation, that analysis does not apply to official government acts taken by persons acting in their official capacity.  The government cannot have religious beliefs the way a corporation might because of the Establishment Clause.  Davis fails to appreciate the critical distinction between actions taken in her personal capacity and those in her official capacity as Rowan County Clerk.  As Rowan County Clerk, any action by Davis to apply her own religious beliefs to any of her official duties is a direct violation of the Establishment Clause.  The government has no right to the free exercise of religion because such a right would lead directly to the *establishment* of a government religion.

In addition, even if KRS 446.350 were deemed to permit a constitutionally elected official to refuse to perform a public duty, it could only apply when the government action "substantially burden[s]" one's free exercise.  Id.  The Beshear Letter does not substantially burden Davis' free exercise because it does not compel her – and indeed could not compel her – to do anything.  More fundamentally, the issuance of marriage licenses is one of Davis' statutory duties;

it is not a duty of the Governor or the Commissioner.  See KRS Ch. 402.  The statutes do not require Davis to condone, approve, or endorse any marriage. Rather, Davis must simply certify that the legal prerequisites for issuance of a license have been met.  Id.  This purely ministerial function does not implicate her religious beliefs – let alone substantially burden them – any more than any action taken by a government official implicates his/her religious beliefs.  As the District Court correctly stated, Davis is free to practice her religion in any manner she chooses when not acting under color of law.[9]  [DE 43, Memorandum Opinion and Order at 27, Page ID 1172].

Contrary to Davis' position, the United States Supreme Court has "never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate."  Smith, 494 U.S. at 878-79.  The Constitution does not "support the proposition that a

---

[9] This dispute arises in the context of the Supreme Court decision in Obergefell, but the fallacy in Davis' argument is easily illustrated by different circumstances. Surely, no one would reasonably argue that an Amish county clerk could refuse to issue vehicle license plates because her religion prohibits her from operating a motor vehicle.  This is exactly the same argument Davis makes.  Government officials acting in their official capacity do not have the ability to cite personal religious beliefs in picking and choosing which statutory duties their office will fulfill.  A claim of religious freedom does not elevate professed beliefs "superior to the law of the land, and in effect to permit every citizen to become a law unto himself."  Reynolds v. United States, 98 U.S. 145, 167 (1878).  To do so would eviscerate the rule of law.

stance of conscientious opposition relieves an objector from any colliding duty fixed by a democratic government." Id. at 882 (citation omitted).

Davis fails to appreciate the distinction between actions taken in her official capacity as county clerk and those in her individual capacity as a citizen. "[T]here is no constitutional right to public office." Napolitano v. Ward, 317 F. Supp. 83, 85 (N.D. Ill. 1970). The Supreme Court has made clear that statements and actions taken by public employees pursuant to their official duties are not statements and actions by private citizens for First Amendment purposes. Garcetti, 547 U.S. at 421. The scope of a public employee's right to free exercise "must sometimes yield to the legitimate interest of the government employer." Marchi v. Board of Coop. Educ. Servs., 173 F.3d 469, 476 (2d Cir. 1999). This must be the rule, or else government officials would be free to shirk their legal obligations simply by citing religion. Indeed, if a government official were permitted to discharge her duties as dictated by religious preference as opposed to the rule of law, the government would violate the First Amendment Establishment Clause, which the District Court observed has likely already occurred. [DE 43, Memorandum Opinion and Order at 15, Page ID 1160]. By refusing to issue marriage licenses on the basis of her personal religious beliefs, Davis has established those beliefs as the policy of the Rowan County Clerk and thereby herself violated the First Amendment. "The risk that governmental approval of some [religious beliefs] and

disapproval of others will be perceived as favoring one religion over another is an important risk that the Establishment Clause was designed to preclude." Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 20 (1989).

Davis has failed to demonstrate likelihood of success on her exercise of religion claim. Consequently, the District Court's "denial" of Davis' Motion for Preliminary Injunction must be affirmed.

### 3.    *Davis is Unlikely to Succeed on Her Free Speech Claim (Counts VI and XI).*

Davis claims that "Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst" and set out in the Beshear Letter violate her right to free speech guaranteed by the First Amendment to the U.S. Constitution and Sections 1 and 8 of the Kentucky Constitution.[10]    [DE 34, Third-Party Complaint at Counts VI and XI, Page ID 765, 771]. Those policies, Davis alleges, "would compel [her] to state her identification, authorization, and approval as 'marriage' of same-sex relationships which cannot be 'marriage' according to her religious beliefs." [Id. at ¶¶ 92, 137]. As set out above, the State Appellees do not possess authority over Davis with respect to issuance of marriage licenses and therefore cannot "compel" her to issue such licenses. Even if the Beshear Letter

---

[10] "[F]ree speech and free expression protections under the Kentucky Constitution are consistent with those in the United States Constitution" and therefore utilize the same standards. Cam I, Inc. v. Louisville/Jefferson County Metro Gov't, 2007 Ky. App. LEXIS 370 (Ky. App. 2007); see also Gingerich, 382 S.W.3d at 839.

could be read as compelling Davis to issue marriage licenses, the free speech claim would still fail as a matter of law. The District Court correctly rejected Davis' arguments in the context of Plaintiffs' Motion for Preliminary Injunction. [DE 43, Memorandum Opinion and Order, Page ID 1146.]

The act of issuing a government-sanctioned license is not protected speech attributable to Davis. Rather, it is a ministerial act statutorily required of the Rowan County Clerk. The issuance of a marriage license simply certifies that the couple satisfies the legal prerequisites for marriage. KRS 402.100. To the extent the issuance of marriage licenses constitutes speech, it is attributable to the government and not Davis. Walker v. Texas Sons of Confederate Veterans, Inc., 135 S.Ct. 2239, 2249 (2015) (statements on license plates likely convey that "the State has endorsed that message"). Marriage licenses are issued under the authority of the Rowan County Clerk and not Kim Davis as a citizen. Because the issuance of marriage licenses is not speech attributable to Davis, her claimed violation of the right to free speech fails as a matter of law.

The Supreme Court has made clear the distinction that Davis completely fails to acknowledge and appreciate: "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." Garcetti, 547 U.S. at 419 (citation omitted). Indeed, "government has significantly greater leeway in its dealings with citizen employees than it does when it brings its

sovereign power to bear on citizens at large." Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591, 599 (2008). To determine whether a government official's right of free expression has been violated, the Court must consider two questions. First, did the official speak "as a citizen on a matter of public concern?" Garcetti, 547 U.S. at 418 (citing the test in Pickering v. Board of Education, 391 U.S. 563 (1968)). If not, "the employee has no First Amendment cause of action." Id. If yes, the Court must then determine whether the government "had an adequate justification for treating the employee differently from any other member of the general public." Id.

The District Court found that Davis' allegations fail the first prong of this analysis. [DE 43, Memorandum Opinion and Order at 24-25, Page ID 1169-70]. The act of issuing marriage licenses is not speech as a citizen on a matter of public concern. As the District Court explained, ordinary citizens are not empowered to issue marriage licenses. "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." Garcetti, 547 U.S. at 421-22. Davis is empowered to issue licenses only because she is cloaked with the statutory requirement to do so. Such "speech" is a product of her official duties, and therefore is not entitled to First Amendment protection. Individuals acting in their

official capacity are acting as the government.  Hafer v. Melo, 502 U.S. 21, 27 (1991).

Davis has failed to demonstrate likelihood of success on her free speech claim.  Consequently, the District Court's "denial" of Davis' Motion for Preliminary Injunction must be affirmed.

### 4.    *Davis is Unlikely to Succeed on Her Religious Test Claim (Counts VII and XII).*

Davis claims that "Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst" as set out in the Beshear Letter amount to a religious test in violation of the United States Constitution article VI and Section 5 of the Kentucky Constitution.  [DE 34, Third-Party Complaint at Counts VII and XII, Page ID 766, 772].  This claim likewise fails as a matter of law.  And again, the District Court correctly rejected Davis' arguments in the context of Plaintiffs' Motion for Preliminary Injunction.  [DE 43, Memorandum Opinion and Order, Page ID 1146.]

Section 5 of the Kentucky Constitution does not expressly prohibit a "religious test" for holding public office.  See KY. CONST. § 5.  Rather, this provision generally provides for freedom of religious exercise.  Id.  The Kentucky Supreme Court has held that Section 5 provides no greater protection than the rights conveyed by the First Amendment to the United States Constitution.  Gingerich v. Commonwealth, 382 S.W.3d 835, 844 (Ky. 2012).  As explained

above, Davis has failed to allege an actionable claim for violation of the right of free exercise of religion.  [Supra Argument III(A)(2)].

Article VI of the United States Constitution provides that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States."  CONST. art. VI.  By its plain language, this clause applies only to offices created under federal law – not state officials such as Davis.  Therefore, Davis has no actionable claim under this provision.

To the extent article VI does apply to Davis, her claim under it still fails.  Davis' obligation to issue marriage licenses does not constitute any type of religious or moral approval.  Rather, Davis is required to perform the ministerial function of ascertaining that a putative married couple meets the legal perquisites for marriage.  See KRS 402.100.  Simply stated, Davis' role is a legal one – not a moral or religious one.  The issuance of a marriage license to couple entitled to marry does not convey any religious approval of the union, just as the recording of a deed does not convey any religious approval of the conveyance of property.

Davis has failed to demonstrate likelihood of success on her religious test claim.  Consequently, the District Court's "denial" of Davis' Motion for Preliminary Injunction must be affirmed.

### B.    Davis Will Not Sustain Irreparable Harm Without the Requested Injunction Against the State Appellees.

Davis will not sustain any irreparable harm without the requested injunction against the State Appellees.  Indeed, as explained above, the requested injunction will not grant Davis *any* relief.  [Supra Argument III(A)(1)].  Even if the State Appellees were enjoined from enforcing the Beshear Letter, Davis would still be under separate statutory, constitutional, and injunctive obligations to issue marriage licenses to all qualified couples.  Thus, the requested injunction against the State Appellees will have no effect on Davis' alleged injury.  This factor weighs against issuance of an injunction.

### C.    The Requested Injunction May Cause Harm to Others and is Contrary to the Public Interest.

As explained above, the requested injunction would have no effect because the State Appellees cannot "exempt" Davis from performing her obligations under statute and the previously-entered preliminary injunction.  Even if the State Appellees could excuse Davis from complying with the law, such an injunction would cause substantial harm to others, including those qualified couples in Rowan County who wish to exercise their fundamental right to marriage.  [DE 43, Memorandum Opinion and Order at 15-16, Page ID 1160-61 (finding that plaintiffs would suffer irreparable harm if Davis were permitted to refuse marriage licenses)].  Likewise, the public interest would be harmed if the requested

injunction were issued, as "it is always in the public interest to prevent the violation of a party's constitutional rights," such as the plaintiffs' fundamental right of marriage. G&V Lounge v. Mich. Liquor Control Comm'n, 23 F.3d 1071, 1079 (6th Cir. 1994). Moreover, exempting Davis from complying with the statutory marriage licensing scheme that is otherwise uniform statewide could cause uncertainty and unequal application of the law. Orderly application of the rule of law is in the public interest. See, e.g. Papachristou v. Jacksonville, 405 U.S. 156, 171 (1972).

All factors guiding the District Court's discretion weigh against an injunction to enjoin the State Appellees. Accordingly, the "denial" of the requested injunction must be affirmed.

## IV. State Appellees Do Not Take a Position on the Appeals in Case Nos. 15-5880 and 15-5978.

The appeals in Case Nos. 15-5880 and 15-5978 concern the Preliminary Injunction entered against Davis and the finding of contempt, respectively. Other than the District Court's correct rejection of Davis' constitutional defenses to the Plaintiffs' Motion for Preliminary Injunction as discussed above, the State Appellees do not take a position on the issues raised in these appeals.

## CONCLUSION

For the reasons set forth above and in the District Court record below, the State Appellees respectfully request they be dismissed on the basis of the Eleventh

Amendment and because Davis has attempted to appeal from an unappealable interlocutory order in Case No. 15-5961. To the extent this Court concludes the District Court effectively denied Davis' Motion for Preliminary Injunction, that denial must be affirmed.

Respectfully submitted,

STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1380
(859) 231-3000
(859) 253-1093 facsimile

By: /s/ Palmer G. Vance II
    William M. Lear, Jr.
    Palmer G. Vance II

*Counsel for Appellees Governor*
*Steven L. Beshear and Commissioner*
*Wayne Onkst in their Official Capacities*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation established by the Order of October 1, 2015 [DE 54]. This brief contains 10,864 words, excluding those portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in Times New Roman 14-point font using Microsoft Word 2010.

/s/ Palmer G. Vance II                     December 2, 2015
*Counsel for Steven L. Beshear and*        Date
*Wayne Onkst in their Official Capacities*

# CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Court's

CM/ECF system on the 2d day of December 2015, which simultaneously serves a

copy via electronic mail to the following:

Daniel J. Canon
Laura E. Landenwich
Leonard Joe Dunman
CLAY DANIEL WALTON ADAMS, PLC
dan@dancanonlaw.com
laura@justiceky.com
joe@justiceky.com
COUNSEL FOR PLAINTIFFS

William Ellis Sharp
ACLU OF KENTUCKY
sharp@aclu-ky.org
COUNSEL FOR PLAINTIFFS

James D. Esseks
Ria Tabacco Mar
Daniel Mach
Heather Weaver
AMERICAN CIVIL LIBERTIES UNION
jesseks@aclu.org
rmar@aclu.org
dmach@aclu.org
hweaver@aclu.org
COUNSEL FOR PLAINTIFFS

Anthony Charles Donahue
DONAHUE LAW GROUP, PSC
acdonahue@donahuelawgroup.com
COUNSEL FOR KIM DAVIS

Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Jonathan D. Christman
LIBERTY COUNSEL
court@lc.org
hmihet@lc.org
rgannam@lc.org
jchristman@lc.org
COUNSEL FOR KIM DAVIS

/s/ Palmer G. Vance II
*Counsel for Appellees Governor*
*Steven L. Beshear and Commissioner*
*Wayne Onkst in their Official Capacities*

## DESIGNATION OF LOWER COURT DOCUMENTS

| D.E. | Description | Page ID Range |
|---|---|---|
| 1 | Complaint | 1-33 |
| 2 | Plaintiff Motion for Preliminary Injunction | 34-48 |
| 28 | Rowan County Response to Plaintiff Motion for Preliminary Injunction | 309-317 |
| 29 | Davis Response to Plaintiff Motion for Preliminary Injunction | 318-646 |
| 32 | Davis Motion to Dismiss | 663-700 |
| 34 | Third-Party Complaint | 745-792 |
| 36 | Plaintiff Reply on Motion for Preliminary Injunction | 797-813 |
| 39 | Davis Motion for Preliminary Injunction | 824-1130 |
| 43 | Memorandum Opinion and Order [granting Plaintiff Motion for Preliminary Injunction] | 1146-1173 |
| 44 | Notice of Appeal | 1174-1206 |
| 49 | Rowan County Supplemental Memorandum on Plaintiff Motion for Preliminary Injunction | 1248-1253 |
| 52 | Order [denying Motion to Stay] | 1264-1270 |
| 55 | Order [setting date for Preliminary Injunction] | 1283-1284 |
| 58 | Order [staying briefing on Davis motions] | 1289 |
| 66 | Notice of Appeal | 1471-1476 |
| 67 | Motion to Hold Kim Davis in Contempt | 1477-1487 |
| 68 | Motion to Clarify Preliminary Injunction | 1488-1495 |
| 70 | Motion for Injunction Pending Appeal | 1498-1533 |
| 72 | Davis Response to Motion to Hold Kim Davis in Contempt | 1540-1546 |
| 74 | Order [granting Motion to Clarify Preliminary Injunction] | 1557 |
| 75 | Order [granting Motion to Hold Kim Davis in Contempt] | 1558-1559 |
| 82 | Notice of Appeal | 1785-1790 |
| 83 | Notice of Appeal | 1791-1797 |
| 84 | Plaintiff Status Report | 1798-1817 |
| 89 | Order [releasing Davis from custody] | 1827-1828 |
| 91 | Third-Party Defendant Response to Motion for Injunction Pending Appeal | 1829-1844 |
| 92 | Third-Party Defendant Motion to Dismiss | 1845-1874 |

| 97 | Davis Reply on Motion for Injunction Pending Appeal | 1901-1916 |
|---|---|---|
| 103 | Order [denying Motion for Injunction Pending Appeal] | 2175-2180 |
| 113 | Emergency Motion to Stay September 3 Injunction Pending Appeal | 2200-2292 |
| 114 | Brian Mason Status Report | 2293-2295 |
| 120 | Plaintiff Motion to Enforce | 2312-2328 |
| 121 | Order [denying Davis Emergency Motion to Stay September 3 Injunction Pending Appeal] | 2329-2333 |
| 123 | Davis Response to Third-Party Defendant Motion to Dismiss | 2336-2384 |
| 124 | Third-Party Defendant Reply on Motion to Dismiss | 2385-2438 |
| 133 | Plaintiff Response to Motion to Enforce | 2478-2512 |
| 135 | Order [directing Third-Party Defendants to respond to Motion to Enforce] | 2515 |
| 148 | Third-Party Defendant Response to Motion to Enforce | 2551-2563 |
| 149 | Plaintiff Reply on Motion to Enforce | 2564-2582 |

119363.152876/4447962.8



COMMONWEALTH OF KENTUCKY
OFFICE OF THE GOVERNOR

STEVEN L. BESHEAR
GOVERNOR

700 CAPITOL AVENUE
SUITE 100
FRANKFORT, KY 40601
(502) 564-2611
FAX: (502) 564-2517

June 26, 2015

Dear Kentucky County Clerks:

Today, the United States Supreme Court issued its decision regarding the constitutionality of states' bans on same-sex marriage. The Court struck down those laws, finding that they were invalid under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

As elected officials, each of us has taken an oath to uphold the Constitution of the United States and the Constitution of Kentucky. The Obergefell decision makes plain that the Constitution requires that Kentucky – and all states - must license and recognize the marriages of same-sex couples. Neither your oath nor the Supreme Court dictates what you must believe. But as elected officials, they do prescribe how we must act.

Effective today, Kentucky will recognize as valid all same sex marriages performed in other states and in Kentucky. In accordance with my instruction, all executive branch agencies are already working to make any operational changes that will be necessary to implement the Supreme Court decision. Now that same-sex couples are entitled to the issuance of a marriage license, the Department of Libraries and Archives will be sending a gender-neutral form to you today, along with instructions for its use.

You should consult with your county attorney on any particular aspects related to the implementation of the Supreme Court's decision. While there are certainly strongly held views on both sides of this issue, I know that Kentuckians are law-abiding people and will respect the rule of law. After all, the things that unite us as a people are much stronger than the things that divide us.

Thank you in advance for the valuable services you continue to render to the people of the Commonwealth.

Sincerely,

Steven L. Beshear

Plaintiffs' Exh. 3

KentuckyUnbridledSpirit.com

*Kentucky*
UNBRIDLED SPIRIT

An Equal Opportunity Employer M/F/D